UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN BROWN, | ) | CIVIL ACTION NO |
| | ) | 3:03CV00420(MRK) |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| REGIONAL SCHOOL DISTRICT 13, | ) | |
| WILLIAM D. BRECK, | ) | |
| SUSAN L. VICCARO and | ) | |
| ANN RICHARDSON, ‗ | ) | |
| Defendants | ) | JANUARY 14, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

## I.     INTRODUCTION

The plaintiff, Susan Brown, was at all times relevant employed by the defendant,

Regional School District 13 at its Strong Middle School as a non-tenured teacher.  The plaintiff

now brings the present four count complaint against the following defendants: (1) Regional

School District 13, (2) William D. Breck, the District's Superintendent of Schools, (3) Susan L.

Viccaro, the District's Director of Pupil Services, and (4) Ann Richardson, Strong Middle School

Principal.  The plaintiff alleges that since March of 2001, the defendants have subjected her to a

continuous pattern of abuse and harassment, including "false accusations of trivial deficiencies

as an employee on a constant basis."  ***Complaint, Count One, ¶8.***  This alleged conduct by the

defendants has included "placing false and malicious statements" regarding the plaintiff in her personnel file and "humiliating her in front of her peers." *Id*. The plaintiff alleges that this "pattern of abuse" culminated on March 3, 2003, with a letter to the plaintiff from defendant Breck "informing her of his intention to prevent her teaching contract from being renewed for the school year beginning in August of 2003."[1]  *Id., ¶9*. The plaintiff claims that this "abuse" has been significantly different from the treatment accorded to other teachers "similarly situated" to the plaintiff, and that the plaintiff has thus been deprived of her right to equal protection under the laws as provided under the Fourteenth Amendment of the U.S. Constitution. *Id., ¶¶10-12.*

The plaintiff further alleges that in the autumn of 2002, believing that she was been subject to disparate treatment, she retained the services of an attorney (Leon Rosenblatt). *Id., Count Two, ¶8.* On November 12, 2002, Rosenblatt wrote to defendant Viccaro objecting to the alleged treatment of the plaintiff by the defendants (i.e., being "whipsawed" between Viccaro and Richardson, harassment, defamation), and informed Viccaro of his intention to initiate litigation on the plaintiff's behavior. *Id., ¶9.* The plaintiff alleges that the defendants retaliated against the plaintiff for this "exercise of her First Amendment rights" by "significantly increasing the level of harassment and abuse" and "humiliating her publicly in the presence of

---

[1] Parenthetically, Connecticut General Statutes §10-151 govern the renewal and non renewal of non-tenured teachers, along with the acquisition of tenure rights.

- 2 -

her peers." *Id.,* ¶*10.* Attorney Rosenblatt then sent a fax on the plaintiff's behalf, requesting a copy of the plaintiff's entire personnel file, allegedly pursuant to Connecticut General Statutes §31-128 et seq.[2] *Id.,* ¶*11.* The plaintiff claims that upon receipt of this fax, and in further retaliation for the plaintiff's previous "exercises of First Amendment Rights," defendant Breck sent the afore-mentioned March 3, 2002 letter to the plaintiff regarding the non-renewal of her employment for the ensuing school year. *Id.,* ¶*12.* The plaintiff alleges that these actions of the defendants constitute a violation of the plaintiff's rights to freedom of speech, freedom to petition for redress of grievances and freedom of association, all of which are protected by the First Amendment of the U. S. Constitution. *Id.,* ¶*14.* The plaintiff further alleges that the defendants' actions constitute the intentional infliction of emotional distress, *Id., Count Three,* and the negligent infliction of emotional distress. *Id., Count Four.* The plaintiff seeks compensatory damages, punitive damages, attorney's fees, and injunctive relieve.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendants moved to dismiss the plaintiff's complaint. As noted by this court at the November 20, 2003 status conference, and its order dated November 21, 2003, the court denied the motion to dismiss without prejudice to renew as a motion for summary judgment, due to the collapsing of the pre-

---

[2] Parenthetically, this statute does not apply to defendant Regional School District 13. City of Hartford v. Freedom of Information Commission, 201 Conn. 421, 429-430, 518 A.2d 49 (1986).

- 3 -

trial scheduling order caused by the transfer of this case.  Pursuant to Rule 56 of the Federal

Rules of Civil Procedure, the defendants now so move for summary judgment.


## II.     FACTS

See Local Rule 56(a)(1) Statement, annexed hereto.


## III.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be

granted where the moving party sustains its burden of showing that there is no genuine issue as

to any material fact and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P.

56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986).  "If the

party opposing summary judgment 'generates uncertainty as to the true state of any material fact,

the procedural weapon of summary judgment is inappropriate.'"  National Union Fire Insurance

Co. v. Turtur, 892 F. 2d 199, 203 (2nd Cir. 1989), quoting Beacon Enterprises, Inc. v. Menzies,

715 F.2d 757, 762 (2nd Cir. 1983).  Nevertheless, the "mere existence of factual issues - where

those issues are not material to the claims before the court - will not suffice to defeat a motion

for summary judgment."  Quarles v. General Motors Corporation (Motor Holding Division), 758

F.2d 839, 840 (2nd Cir. 1985).  Furthermore, "the mere existence of some alleged factual dispute

- 4 -

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986) (emphasis in original).

Once a moving party has made a showing that there are no material issues of facts in dispute, "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." Quarles v. General Motors Corporation, 758 F.2d at 840. When the underlying events in a case are not in genuine dispute but their characterization and application of a legal test are disputed, the contested issue may still be one for the court vis-à-vis summary judgment procedures. Newell Companies, Inc. v. Kenney Manufacturing Company, 864 F.2d 757, 763 (Fed. Cir. 1988), *cert. denied,* 493 U.S. 814, 110 S.Ct. 62 (1989).   In considering the propriety of the granting of summary judgment, the U.S. Supreme Court has stated:  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules [of Civil Procedure] as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. at 327, 106 S.Ct. at 2555, *quoting* Fed. R. Civ. P. 1.

- 5 -

## IV.   ARGUMENT

### A.   JUDGMENT SHOULD ENTER FOR THE DEFENDANTS AS TO THE PLAINTIFF'S FIRST AMENDMENT CLAIMS CONTAINED IN COUNT TWO BECAUSE THE PLAINTIFF'S SPEECH DID NOT TOUCH UPON A MATTER OF PUBLIC CONCERN.

The plaintiff alleges that the defendants retaliated against her based upon her exercise of rights guaranteed under the First Amendment of the U. S. Constitution. The plaintiff's claim of a constitutionally cognizable retaliation is legally insufficient because she has failed to allege or establish that she engaged in any conduct protected by the First Amendment; the plaintiff's speech did not touch upon a matter of public concern.   Since the right to petition the government for the redress of grievances under the First Amendment is "an assurance of a particular freedom of expression ... [that] is 'generally subject to the same constitutional analysis' as the right to free speech," including the "public concern"/Connick v. Myers test; White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2nd Cir. 1993); and since the instant "freedom of association" claim is subject to the same "public concern" analysis as a pure "free speech" claim by an employee; Petrario v. Cutler, 187 F. Supp. 2d 26, 32 (D.Conn. 2002); Gros v. Port Washington Police District, 932 F. Supp. 63, 66 (E.D.N.Y. 1996); the plaintiff's various First Amendment claims should be treated (and disposed of) collectively.  Cahill v. O'Donnell, 75 F.Supp.2d 264, 274 (S.D.N.Y. 1999).  The fact that the speech/conduct in question was not on a matter of public

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

concern bars all of her First Amendment claims, including her "freedom of association" and "right to petition the government for redress of grievances" claims. Id.

The U. S. Supreme Court has drawn a distinction between communications of public employees involving matters of public concern and those involving essentially personal grievances. Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684 (1983). Communications concerning matters of public concern are protected by the First Amendment. However, "... when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick v. Myers, 461 U.S. at 147, 103 S.Ct. at 1690. Ordinarily, decisions involving public employment "which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the decision are alleged to be mistaken or unreasonable." Connick v. Myers, 461 U.S. at 146-147, 103 S.Ct. at 1690. Whether a public employee's speech addresses a matter of public concern must be determined by the content, form, and context of the given statement, as revealed by the whole record. Id., 461 U.S. at 147-148, 103 S.Ct. at 1690. The inquiry into the protected status of speech is one of law, not fact. Id. at 148, 103 S.Ct. at 1690, n. 7. If the speech does not address a matter of public concern, a court will not scrutinize the reasons

- 7 -

motivating the employment decision that was allegedly in retaliation for that speech. <u>Id</u>. at 146-

57, 103 S.Ct. at 1690.

In <u>Connick</u>, the U.S. Supreme Court ruled that the questionnaire submitted by the

plaintiff, Assistant District Attorney Myers, to other Assistant District Attorneys contained

questions not protected by the First Amendment because they did not fall "under the rubric of

matters of public concern." <u>Id</u>. at 148, 103 S.Ct. at 1690. These questions, which pertained to

the level of confidence and trust that the plaintiff's co-workers possess in various supervisors, the

level of office morale, and the need for a grievance committee were viewed by the Court to be

"mere extensions" of the plaintiff's dispute over her transfer to another section of the criminal

court. <u>Id</u>. The Court stated:

> Indeed, the questionnaire, if released to the public, would convey no information at all
> other than the fact that a single employee is upset with the status quo. While discipline
> and morale in the work place are related to an agency's efficient performance of its duties,
> the focus of Myers' questions is not to evaluate the performance of the office but rather to
> gather ammunition for another round of controversy with her superiors. These questions
> reflect one employee's dissatisfaction with a transfer and an attempt to turn that
> displeasure into a cause celebre.

<u>Id</u>., 93 S.Ct. at 1691.

Similarly, other courts have ruled that a public employee's speech is not constitutionally

protected where such speech merely addresses personal matters. In <u>Dodds v. Childers</u>, 933 F.2d

- 8 -

LAW OFFICES • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

271 (5th Cir. 1991), a non-tenured instructor at a junior college claimed that her position was eliminated in response to her continued complaints to college officials about the status of the sister-in-law of the President of the college's Board of Trustees as an instructor/trainee. The plaintiff's communications included a memo to the college dean indicating that the college should not "create jobs based on personal gain and expediency." <u>Dodds v. Childers</u>, 932 F.2d at 272. The plaintiff, however, admitted that she feared that the President's sister-in-law was being trained to replace her as an instructor at the college. The court found that "an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances." <u>Dodds v. Childers</u>, 933 F.2d at 273. The court stated:

> To rise to the level of public concern, the speech must have been made primarily as a citizen rather than as an employee. The court may therefore be required to assess the primary motivation of the speaker in evaluating whether her speech addresses a matter of public concern.

<u>Id</u>. In affirming the trial court's decision dismissing the plaintiff's action, the court noted:

> All speech arising from "mixed motives", however, is not automatically protected; the speaker must have spoken *predominantly* "as a citizen" to trigger First Amendment protection.... Dodds' comments indicate a primary concern as the effect of favoritism ... on her own employment, not its potential effect on the public interest.... Her protest about not creating jobs "based on personal gain and political expediency" arose in reference to her fear that [the President's sister-in-law] was being groomed to take her job.

- 9 -

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

Id. at 274. *See also* Coyne v. City of Somerville, 972 F.2d 440 (1st Cir. 1992); Ezekwo v. NYC

Health & Hospitals Corp., 940 F.2d 775, 781 (2nd Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct.

657 (1991) (doctor's complaints were personal in nature and generally related to her own

situation within the hospital's residency program; fact that one or two of the doctor's statements

related to matters of public concern would not taint the general nature of her statements); Maples

v. Martin, 858 F.2d 1546, 1553, n. 12 (11th Cir. 1988) ("plaintiffs should not be allowed to

'bootstrap' a personal grievance into an issue of public concern by general reference to 'popular

interest in the way public institutions are run'"); Alba v. Ansonia Board of Education, 999

F.Supp. 687, 693 (D.Conn. 1998) (plaintiff's speech about the non-renewal of his employment as

a teacher not protected; primary aim of plaintiff's speech was personal betterment, not to

implicate a system-wide problem with the administration of education or raise social or political

issues of interest to the community).

    In Saulpaugh v. Monroe Comm. Hosp., 4 F.3d 134 (2nd Cir. 1993), the Second Circuit of

the U.S. Court of Appeals rejected the plaintiff's claims that her complaints to supervisors of

sexual harassment constituted matters of public concern. The court held that her complaints

"were motivated by and dealt with her individual employment situation." 4 F.3d at 134. *See*

*also* Bernheim v. Litt, 79 F.3d 318, 324 (2nd Cir.1996) (school teacher's speech did not merit

constitutional protection when it was about the conditions of her employment at her school and

- 10 -

LAW OFFICES • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

her rejection as a speaker at a convention of the American Federation of Teachers); Griffin v.

Thomas, 929 F.2d 1210, 1214-15 (7th Cir.1991) (teacher's filing union grievance regarding her

performance rating did not involve a matter of public concern); Havekost v. United States

Department of Navy, 925 F.2d 316, 318 (9th Cir.1991) (complaint about dress code and staffing

policies was nothing more than a "workplace grievance" not entitled to constitutional protection);

Kirkland v. Northside Independent School District, 890 F.2d 794 (5th Cir.1989), *cert. denied*,

496 U.S. 926, 110 S.Ct. 2620 (1990) (high school teacher's use of an unapproved reading list in

world history class does not present matter of public concern; case presents nothing more than an

"ordinary employment dispute"); Knapp v. Whitaker, 757 F.2d 827, 840 (7th Cir.), *cert. denied*,

474 U.S. 803, 106 S.Ct. 36 (1985) (teacher's complaints about classroom assignments and

content of evaluation are not matters of public concern); Orick v. Banziger, 945 F.Supp. 1084,

1089 (S.D.Ohio 1996) (letter to requesting back pay and threatening further legal action is not a

matter of public concern; dissatisfaction with employer is relevant to personal interests only);.

Galligan v. Town of Manchester, 2003 WL 21146710, 2003 U.S. Dist. LEXIS 8362 (D.Conn.

2003) (plaintiff's speech touches on matters wholly related to her personally and not to those of

public concern, such as filing union grievances for the purposes of addressing defendant alleged

"harassing conduct" towards her, clarifying her job duties and requesting meeting with defendant

to discuss need of reasonable accommodation).

- 11 -

In the instant case, the plaintiff claims that she was subject to "abuse," "harassment," and non-renewal proceedings because of her "speech" regarding her employment. The plaintiff's alleged speech is her retention of an attorney, due to her belief that she was receiving disparate treatment in her employment; the attorney subsequently wrote to defendant Viccaro objecting to the treatment of the plaintiff by the defendants (i.e., being "whipsawed," harassed, defamed), and informing Viccaro of his intention to initiate litigation on the plaintiff's behavior. ***Complaint, Count Two, ¶¶8-9; Attachment I.*** The attorney also sent a fax on the plaintiff's behalf, requesting a copy of the plaintiff's entire personnel file. ***Complaint, Count Two, ¶12.*** This alleged speech concerns the plaintiff's own employment status and touches upon a purely personal concern. As such, the plaintiff's speech does not as a matter of law merit protection under the First Amendment. Thus, this court should enter judgment for the defendants as to Count Two.

### B.   IN ADDITION, THE PLAINTIFF'S FIRST AMENDMENT CLAIMS ARE INSUFFICIENT DUE TO THE NON-RETALIATORY REASONS FOR THE DEFENDANTS' ACTIONS.

Assuming *arguendo* that the plaintiff engaged in any expression or conduct protected by the First Amendment, she must nevertheless show that he suffered an adverse decision following the alleged protected activity and there was a causal connection between the activity and the adverse decision. <u>Blum v. Schlegel</u>, 18 F.3d 1005 (2nd Cir. 1994). The U. S. Supreme Court has

- 12 -

LAW OFFICES  •  **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC**  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO. 62326

noted that an actionable violation of the First Amendment (or any other constitutional provision) does not exist where the defendant shows it would have taken the same action even in the absence of the plaintiff's constitutionally protected conduct. Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 286-7, 97 S.Ct. 568, 575-6 (1977). The burden is initially placed upon a plaintiff to show that her conduct was constitutionally protected, and that this conduct was a "substantial factor" or "motivating factor" in the employment decision; the public employer may then still avoid liability by showing by a preponderance of the evidence that it would have reached the same decision as to the plaintiff's employment even in the absence of the protected conduct. Id.

The non-retaliatory reasons for the defendants' actions belie the existence of an actionable constitutional violation. In particular, the causal connection must be sufficient to warrant the inference that the speech was a substantial motivating factor in the defendants' actions. Blum v. Schlegel, 18 F.3d at 1010. The alleged speech by the plaintiff was a November 12, 2002 letter by her attorney, along with the attorney's March 2003 request for access to the plaintiff's personnel file. *Attachment I*. However, by June of 2001, the plaintiff was put on notice of numerous performance concerns that could lead to the non-renewal of her employment as a non-tenured teacher under Connecticut General Statutes §10-151. *Attachment C*. Such concerns were further expressed vis-à-vis the ongoing evaluation process. *Attachments D-H*.

- 13 -

Such expressed concerns predate the alleged speech in question! Thus, it strains credulity for the plaintiff to claim a nexus between the November 12, 2002 "speech" and the treatment of the plaintiff.

As is evident from the undisputed facts, the District's school administration had long standing concerns with regard to the plaintiff's performance as a teacher. The plaintiff as a non-tenured teacher was subject to the statutorily prescribed evaluation process, along with an ongoing assessment by the District's administration as to the plaintiff's suitability for tenure. Suffice it to say, the acquisition of tenure for a teacher is an important act that should not be taken lightly, since it is significantly more difficult to then terminate the employment of a teacher once he/she acquires tenure. At that point in time a teacher acquires a "property interest" in his/her employment. *Compare* Lee v. Bristol Board of Education, 181 Conn. 69, 73, 434 A.2d 333, 336 (1980) (Connecticut General Statutes §10-151 creates tenure rights and property interest for certified teachers) *with* Mazurek v. Wolcott Board of Education, 815 F. Supp. 71, 75 (D. Conn. 1993) (no property interest in employment for non-tenured, as opposed to tenured teacher). It is an important responsibility for a public school district to make the proper assessment as to the suitability and fit of a teacher, in light of the important roles of a teacher in shaping the lives of our youth and in acting as *in loco parentis* with regard to students. Conley v. Board of Education of the City of New Britain, 143 Conn. 488, 497, 123 A.2d 747 (1956).

- 14 -

With regard to the plaintiff, the statutorily prescribed evaluation process reflected numerous performance deficiencies, namely, exercising poor professional judgment, shortcomings in communication skills and interpersonal dealings with respect to other staff members and parents, failing to follow to administration requests and basic job requirements (i.e., failing to prepare lesson plans and class schedules in a timely manner and make them available to substitute teachers, inability to prepare acceptable behavior plans concerning her students in a timely manner, tardiness, etc.), failing to respond to suggestions or constructive criticism, and failing to improve her performance. *Attachment Q.* These concerns magnified as time passed; *Attachments B-N*; as noted by the District's school administration, there should be an upward improvement in the performance of a teacher as he or she approaches the acquisition of tenure, not a decline. Of course, in light of the plaintiff's unwillingness to acknowledge any weakness, or comply with repeated administration directives, it is no shock that the plaintiff's performance would stagnate or even decline.

There is no support for a claim of any illegal or improper motive for the plaintiff's non-renewal. The plaintiff's conclusory accusations are admitted by the plaintiff to be bereft of any evidentiary support, with the occasional exception of third party hearsay. Indeed, the plaintiff cannot cite to any proof of any ill will toward her that motivated these declining performance

- 15 -

LAW OFFICES • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

evaluations, which (parenthetically) occurred before the plaintiff's alleged speech. *Deposition, pp. 90-91.* All that the plaintiff can cite to as support for a claim that the defendants have been "out to get her" is her belief that defendants Viccaro and Richardson were "adversaries" and that the plaintiff was "kind of a pawn between the two of them." *Deposition, pp. 98-99.* Such a conclusory musing is exposed for what it is by the fact that these two supposedly "adversarial" administrators agreed with each other on their assessment of the plaintiff via the evaluations and their recommendations to defendant Breck to non-renew the plaintiff's employment. In addition, the plaintiff herself admitted that she has no knowledge as to whether Dr. Breck had any personal animus against her; *Deposition, p. 104*; indeed, Dr. Breck had little contact with the plaintiff. *Id., pp. 100-104.* Regardless of the alleged existence (or non-existence ) of an improper motive, the plaintiff cannot establish that she has been treated any differently (for better or for worse) than any other similarly situated non-tenured teachers; see *Section IV.C., infra;* nor can the plaintiff rebut the fact that the defendants would have reached the same decision as to the plaintiff's employment even in the absence of the protected conduct, in light of the evident performance related concerns. <u>Mount Healthy City School District v. Doyle</u>, *supra.*

- 16 -

**C.     JUDGMENT SHOULD ENTER FOR THE DEFENDANTS ON THE PLAINTIFF'S CLAIMS OF VIOLATIONS OF THE EQUAL PROTECTION CLAUSE IN COUNT ONE BECAUSE OF THE LEGITIMATE AND RATIONAL/NON-RETALIATORY REASONS FOR THEIR ACTIONS AND LEGALLY INSUFFICIENCY.**

The plaintiff has alleged that the defendants treated her differently than other teachers in violation of the Equal Protection Clause. The plaintiff's claim of different treatment is not based upon an allegation that she is a member of a protected class or that the alleged disparate treatment tramples upon a fundamental right;[3] accordingly, the plaintiff's equal protection claim must be reviewed under the rational relationship test. *See, e.g.*, Mazurek v. Wolcott Board of Education, 815 F. Supp. 71, 77 (D. Conn. 1993); Kelley v. Johnson, 425 U.S. 238, 247-48, 96 S.Ct. 1440, 1446 (1976). The Second Circuit had previously extended the protections of the Equal Protection Clause to similarly situated individuals who are "selectively treated" differently due to a "malicious or bad faith intent to injure." *See, e.g.*, LeClair v. Saunders, 627 F.2d 606, 611 (2nd Cir. 1980). The U.S. Supreme Court recently recognized such claims under the Equal Protection Clause in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073 (2000). However, such an inquiry into an equal protection claim of "malicious or bad faith intent to injure" does not merit strict scrutiny but rather mere rational basis scrutiny. Id. at 564, 120 S.Ct.

---

[3]To the extent the plaintiff alleges that any disparate treatment emanates from her exercise of speech protected by the First Amendment, the lack of protection of the speech defeats such a claim. *See* Section IV.A, *supra*.

- 17 -

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

at 1074; <u>LeClair v. Saunders</u>, 627 F.2d at 611. Thus, this court need only determine whether defendants' actions present a rational means of advancing a legitimate governmental interest. <u>Williamson v. Lee Optical of Oklahoma</u>, 348 U. S. 483, 488-9, 75 S.Ct. 461, 464-5 (1955). A decision is irrational only if the public entity acts with "no legitimate reason for its decision." <u>Crowley v. Courville</u>, 76 F.3d 47, 52 (2nd Cir. 1996).

In addition, in order to establish that she was subject to selective treatment, a plaintiff must plead that she was similarly situated to other persons but was nevertheless treated differently. *See, e.g.,* <u>Crowley v. Courville</u>, *supra*; <u>Gagliardi v. Village of Pawling</u>, 18 F.3d 188, 193 (2nd Cir. 1994). To be "similarly situated," the individuals with whom the plaintiff attempts to compare herself must be similarly situated in all material respects. <u>Shumway v. United Parcel Service, Inc.</u>, 118 F.3d 60, 64 (2nd Cir. 1997). While the court in <u>Shumway</u> sets forth in detail the definition of "similarly situated" in the context of the plaintiff's burden of establishing a *prima facie* case for a sex discrimination under Title VII, the standard for being "similarly situated" set forth in <u>Shumway</u> is also appropriate for application by analogy to equal protection cases such as the instant matter. *See, e.g.,* <u>LaTrieste Restaurant v. Village of Port Chester</u>, 188 F.3d 65, 69 (2nd Cir. 1999) (applying the "similarly situated" analysis in <u>Shumway</u> to equal protection claim); <u>Hart v. Westchester Cty. Dept. of Social Servs.</u>, 160 F. Supp. 2d 570, 578 (S.D.N.Y. 2001) (same).

- 18 -

Furthermore, under the Equal Protection Clause, the plaintiff at all times must establish the occurrence of <u>intentional</u> discrimination, i.e., a specific intent to retaliate against the plaintiff in order to injure her. <u>Personnel Administrator of Massachusetts v. Feeney</u>, 442 U.S. 256, 99 S.Ct. 2282 (1979) (action must be taken *because of* intent to adversely affect group); <u>Washington v. Davis</u>, 426 U.S. 229, 96 S.Ct. 426 (1976). Merely negligent conduct or errant or mistaken judgment does not support a denial of equal protection. <u>Village of Arlington Heights v. Metropolitan Housing Development Corp.</u>, 429 U.S. 252, 265, 97 S.Ct. 555, 563 (1977); <u>Beck v. Washington</u>, 369 U.S. 541-554-5, 82 S.Ct. 955, 962-3 (1962). Mere disparate impact or unequal results does not suffice for proving an equal protection claim. <u>Washington v. Davis</u>, *supra*; <u>Dandridge v. Williams</u>, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161 (1970).

It is respectfully submitted that the plaintiff's equal protection/selective treatment/ "malicious intent to injure" claims fall far short. As has been discussed previously, *see* Section IV.B, *supra*, the plaintiff has not been treated any differently with regard to the term and conditions of her employment. Notwithstanding the plaintiff's conclusory allegations, the plaintiff has been subject to the same standards of treatment as all other non-tenured teachers.

- 19 -

*See Affidavit of Breck.*[4] Moreover, clear rational (and legitimate non-discriminatory) bases exist for the defendants' treatment of the plaintiff. For example, while reasonable minds may differ, the evaluation process and decision to non-renew the plaintiff's employment as a non-tenured teacher cannot be viewed as irrational. Such action was taken after evaluating the plaintiff's performance as a non-tenured teacher; the recommendation and non-renewal of her employment due to performance related concerns (as expressly permitted by Connecticut General Statutes §10-151(c)), was based upon the evaluation process provided under Connecticut General Statutes §10-151 et seq. It cannot be said that the defendants' actions were irrational, i.e., performed with "no legitimate reason for its decision." Crowley v. Courville, 76 F.3d at 52. The defendants' demands for proficiency and growth in the District's teachers are further justified by the special mission of the schools. *Cf.* Conley v. Board of Education of the City of New Britain, 143 Conn. 488, 497, 123 A.2d 747 (1956) ("It has long been a Connecticut concept that the teacher is in loco parentis" which "imposes obligations upon the teacher as well as upon the pupil").

The plaintiff must demonstrate that defendants maliciously singled out the plaintiff via their treatment of her with the intent to injure him. Crowley v. Courville, 76 F.3d at 53. She fails in this effort. First, a demonstration of different treatment from persons similarly situated, without more, would not establish malice or bad faith. Id. *See also* Zahra v. Town of Southold,

---

[4] Indeed, three teachers were non-renewed in 2003; 5 were non-renewed in 2001.

- 20 -

48 F.3d 674, 679-80 (2nd Cir.1995) ("The evidence suggesting that [plaintiff] was 'treated differently' from others does not, in itself, show malice.")  As stated previously, the plaintiff does not come even close to establishing any basis for an impermissible or malicious motive on the part of the defendants.  Second, the defendants have established legitimate/non-discriminatory/rational bases for their actions based upon their evaluation of a teacher's performance.

In determining whether defendants' actions pass muster under the rational basis test, this court should be mindful that "not every difference in treatment of public employees rises to the level of a constitutional deprivation either under equal protection or due process." Daniels v. Quinn, 801 F.2d 687, 691 (4th Cir. 1986).  While a citizen does not surrender her constitutional rights upon becoming a public employee, the U.S. Supreme Court nevertheless has cautioned that "government offices could not function if every employment decision became a constitutional matter." Connick v. Myers, 461 U.S. 138, 143, 103 S.Ct. 1684, 1688 (1983). Usually, "absent such impermissible sex or racial discrimination or First Amendment restraints - clear violations of positive express constitutional or statutory mandate - the federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." Id. (internal citation omitted). See also Vukadinovich v. Board of School Trustees of Michigan City Schools, 978 F.2d 403, 414 (7th Cir. 1992) ("the Equal

- 21 -

Protection Clause does not require that federal courts review the circumstances surrounding every personnel decision of public school boards.")  As such, the courts have clearly held that they will not serve to second-guess the judgments of government employers with regard to, i.e., the terms and conditions of employment. *See, e.g.*, O'Quinn v. Chambers County, Texas, 636 F.Supp. 1388, 1393-94 (S.D.Tex. 1986).  "Section 1983 protects only *constitutional* rights.  It is not simply a means for federal review of allegedly arbitrary and capricious state action." Cornett v. Sheldon, 894 F.Supp. 715, 723 (S.D.N.Y. 1995) (*citing* Alfaro Motors, Inc., v. Ward, 814 F.2d 883, 888 (2nd Cir. 1987)).  Heller v. Doe by Doe, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642 (1993).  A governmental decision should be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis" for the different treatment.  Id.

In addition, mere selective prosecution or punishment by a public agency does not constitute an actionable offense under the Equal Protection Clause. *See, e.g.*, Falls v. Town of Dyer, 875 F.2d 146 (7th Cir. 1989).  *See also* Wayte v. United States, 470 U.S. 598, 105 S.Ct. 1524 (1985).  An allegation or demonstration of different treatment for persons similarly situated, without more, is insufficient to establish the requisite malice or bad faith intent to injure. *See* Crowley v. Courville, 76 F.3d 47, 52 (2nd Cir. 1996).  Even a gross disparity in employment terms and conditions does not violate the Equal Protection Clause absent clear proof that such classification was based upon malicious intent - grounds which may implicate the

- 22 -

Constitution. <u>O'Quinn v. Chambers County, Texas</u>, *supra*. *Cf.* <u>Wayte v. U.S.</u>, 470 U.S. at 608,

105 S.Ct. at 1531; <u>Russell v. Collins</u>, 998 F.2d 1287, 1294 (5th Cir. 1993) (prosecutor has

discretion to enter into plea agreements with some but not with others.); <u>Jones v. Superintendent</u>

<u>of Rahway State Prison</u>, 725 F.2d 40, 43 (3rd Cir. 1984); <u>U.S. v. Cook</u>, 949 F.2d 289, 292 (10th

Cir. 1991).

     Moreover, when viewing the plaintiff's equal protection claims, courts must also be

mindful that a mere allegation of discriminatory intent does not substantiate a claim of

purposeful discrimination. *See* <u>Snowden v. Hughes</u>, 321 U.S. 1, 64 S.Ct. 397 (1944). In

<u>Snowden</u>, the plaintiff alleged that state officials acted maliciously and misapplied state law in

failing to certify him as a candidate for state office. Upon reviewing the plaintiff's complaint, the

U.S. Supreme Court stated:

> The lack of any allegations in the complaint here, tending to show a purposeful
> discrimination between persons or classes of persons is not supplied by the opprobrious
> epithets "willful" and "malicious" applied to the Board's failure to certify petitioner as a
> successful candidate, or by characterizing that failure as an unequal, unjust, and
> oppressive administration of the laws of Illinois. These epithets disclose nothing as to the
> purpose and consequence of the failure to certify, other than that petitioner has been
> deprived of the nomination and election, and therefore add nothing to the bare fact of an
> intentional deprivation of petitioner's right to be certified to a nomination to which no
> other has been certified.

- 23 -

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

Snowden v. Hughes, 321 U.S. at 10, 64 S.Ct. at 402.  Thus, the Court held that the plaintiff's allegations were insufficient to raise an equal protection claim.  Consistent with Snowden, the courts have ruled that vague and conclusory allegations in civil rights actions that official conduct is "malicious" or "discriminatory" are disfavored.  See, e.g., Barr v. Abrams, 810 F.2d 358, 363 (2nd Cir. 1987); Leclair v. Saunders, 627 F.2d at 609-610.  Indeed, courts have held that claims brought under 42 U.S.C. §1983 require specific allegations at the pleading stage.  See, e.g., Sanders v. City of New York, 692 F. Supp. 308, 311 (S.D. N.Y. 1988).[5]  The Second Circuit of the U.S. Court of Appeals has offered:

> As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.

Barr v. Abrams, 810 F.2d at 363.

---

[5]In Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), the U. S. Supreme Court held that the federal courts may not apply a heightened pleading standard in civil rights cases alleging municipal liability under 42 U.S.C. §1983. In doing so, however, the Court expressly stated that "we . . . have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading standard in cases involving individual government officials." Id. at 166-7. In declining to extend its holding to suits against individual officers, the Court emphasized that, "unlike various government officials, municipalities do not enjoy immunity from suit -- either absolute or qualified -- under §1983." Id. at 166-7. Due to the existence of claims against individual governmental officials (i.e., Breck, Viccaro, and Richardson), it is respectfully submitted that the heightened pleading requirement for §1983 claims is still applicable.

- 24 -

In the instant case, the plaintiff's equal protection claim appears to be based merely upon conclusory allegations and assertions that the defendants maliciously and intentionally harassed and treated her differently.  The plaintiff does not allege or establish how she was "similarly situated" to other teachers, especially in light of her checkered history as displayed by her declining performance evaluations.   As stated previously, the courts have been especially wary of second guessing an employers' discretion in managerial decisions.  Accordingly, the actions of government officials are bequeathed with a presumption of constitutionality, subject to limited scrutiny; accordingly, the courts are loath to intrude and second guess such judgments.  *See* Felton v. Fayette School District, 875 F.2d 191, 193 (8th Cir. 1989). *See also* Board of Education v. McCluskey, 458 U.S. 966; 102 S. Ct. 3469 (1982); Wood v. Strickland, 420 U.S. 308; 95 S. Ct. 992 (1975).  While the plaintiff admittedly is correct in her assertion that those similarly situated must be treated "equally," the Constitution does not require that they be treated identically. Zeigler v. Jackson, 638 F.2d 776 (5th Cir. 1981); *see also* Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566 (1976).  Other than some attention-getting language and crafty phrasing, nowhere does the plaintiff establish a legally sufficient nexus between the defendants' conduct and these prototypical, form allegations of malicious intent.  Slapping a tag of "malice" into a pleading should not grant the plaintiff an opportunity to proceed with her claim as a matter of law. Snowden v. Hughes, 321 U.S. at 10, 64

- 25 -

LAW OFFICES  •  SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO. 62326