S.Ct. at 402; <u>Barr v. Abrams</u>, 810 F.2d at 363.  The plaintiff's conclusory claims are insufficient

to establish an Equal Protection Clause claim.

    The plaintiff was subject to the well established teacher evaluation process.  Based upon

this evaluation process, and their considered judgment, defendants Richardson and Viccaro then

recommended to Dr. Breck that the plaintiff's employment as a teacher be non-renewed prior to

her acquisition of tenure.  Based upon this recommendation, and based upon a review of the

evaluations, Dr. Breck then exercised his authority and recommended to the Board of Education

that the plaintiff's employment be non-renewed.  After the Board of Education so voted from to

non-renew the plaintiff's employment, as the Board has done with other teachers, the plaintiff

exercised her right to a hearing before the Board of Education, as provided under Conn. Gen.

Stat. §10-151.  After a three day hearing, during which the plaintiff and the relevant

administrators (defendants Breck, Richardson, Viccaro) testified, the Board upheld its

determination.  Frankly, there was no deviation from the process provided under statute for the

evaluation and non-renewal of a non-tenured teacher.  While the plaintiff may disagree with the

outcome of the process, and may view herself as deserving of tenure, there simply is no reason to

second guess the defendants' undertaking of this important governmental function, i.e.,

evaluating and employing teachers, especially in the absence of any proof of a malicious motive.

As stated above, the plaintiff herself is unable to provide any support for a claim of any illegal or

- 26 -

improper motive for the plaintiff's non-renewal.  Indeed, the plaintiff cannot cite to any proof of

any ill will toward her that motivated these declining performance evaluations.  Accordingly, this

court should enter judgment for the defendants as to Count One.

> **D.     DEFENDANTS BRECK, RICHARDSON AND VICCARO HAVE A
> QUALIFIED IMMUNITY TO ANY CLAIM FOR MONEY DAMAGES
> CONTAINED IN COUNTS ONE AND TWO.**

The plaintiff seeks compensatory and punitive damages against the defendants.[6]

Defendants Breck, Richardson and Viccaro are entitled to a qualified immunity to the plaintiff's

claim for damages under 42 U.S.C. §1983 in Counts One and Two against them in their

individual capacities.  *See, e.g.,* Harlow v. Fitzgerald, 457 U.S. 800, 818-9, 102 S. Ct. 2727,

2738-9 (1982).


Public officials performing discretionary functions are protected by a qualified, good

faith immunity from liability for damages under 42 U.S.C. §1983; thus, such officials are entitled

to such immunity in their individual capacities "for civil damages insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person

would have known."  Harlow v. Fitzgerald, 457 U.S. at 818, 102 S. Ct. at 2738.  *See also* Natale

v. Town of Ridgefield, 927 F.2d 101, 104-05 (2nd Cir. 1991).  In determining whether such a

---

[6] The plaintiff cannot maintain a claim for punitive damages against the District.  *See* City of Newport v. Fact
Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748 (1981).

- 27 -

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

qualified immunity exists, the court should focus upon the "objective reasonableness of an

official's conduct, as measured by reference to clearly established law." Harlow v. Fitzgerald,

457 U.S. at 818, 102 S. Ct. at 2738. The court should focus on "not only the currently applicable

law, but whether the law was clearly established at the time an action occurred." Id. What

"clearly established" means depends largely "upon the level of generality at which the relevant

'legal rule' is to be established." Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034,

3038-9 (1987). "Clearly established" for purposes of qualified immunity means that "[t]he

contours of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right. This is not to say that an official action is protected by

qualified immunity unless the very action in question has previously been held unlawful, but it is

to say that in the light of pre-existing law the unlawfulness must be apparent." Id., at 640, 107

S.Ct. at 3039 (internal citations omitted). The right allegedly violated must be defined at the

appropriate level of specificity before a court can determine if it was clearly established. See

Wilson v. Layne, 526 U.S. 603, 615, 119 S. Ct. 1692, 1699-1670 (1999).

It is respectfully the plaintiff's complaint is legally and factually insufficient and should

be dismissed. Indeed, it is difficult to separate a discussion of the merits of the plaintiff's claims

of violation of her assorted constitutional rights from this discussion of the existence of a

qualified immunity. Nevertheless, regardless of the merits of the plaintiff's claims of

- 28 -

LAW OFFICES • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

deprivations of constitutional rights, the plaintiff cannot establish that the individual defendants violated "clearly established constitutional rights" in light of the law as established at the time of the actions taken. Harlow v. Fitzgerald, *supra*; Mazurek v. Wolcott Board of Education, 815 F. Supp. 71, 77 (D.Conn. 1993). There is no way that any of the defendants could have thought any role they played in evaluating the plaintiff's performance as a non-tenured teacher and recommending non-renewal of her employment due to performance related concerns (as expressly permitted by Connecticut General Statutes §10-151(c), based upon the evaluation process provided under Connecticut General Statutes §10-151b) would violate the plaintiff's First and Fourteenth Amendment rights. In addition, defendant Breck was not involved in the evaluation process, or in the alleged "harassment," as he had little contact with the plaintiff. Under an "objective reasonableness" standard, the defendants would not know or suspect that their actions could violate plaintiff's "clearly established" constitutional rights; accordingly, defendants Breck, Viccaro and Richardson are entitled to qualified immunity to liability.

**E.    DEFENDANT REGIONAL SCHOOL DISTRICT 13 IS IMMUNE FROM LIABILITY FOR SOME IF NOT ALL OF THE ALLEGATIONS IN COUNTS ONE AND TWO DUE TO THE LACK OF AN OFFICIAL POLICY OR CUSTOM.**

A municipality may be deemed liable pursuant to 42 U.S.C. §1983 for a violation of Constitutional rights if the municipality causes the violation. It may not be held responsible under a theory of *respondeat superior* or vicarious responsibility for every action of its

- 29 -

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

employees. For a municipality to be found liable, the act must have been pursuant to the

municipality's policy or custom. Monell v. Department of Social Services, 436 U.S. 658, 691-

694, 98 S.Ct. 2018, 2036-2037(1978). The act must also have been performed by a body or

official with "final policy-making authority." Jett v. Dallas Independent School District, 491

U.S. 701, 736-37, 109 S.Ct. 2702, 2723-24 (1989), citing City of St. Louis v. Praprotnik, 485

U.S. 112, 123-124, 108 S.Ct. 915, 924 (1988). Random acts or isolated incidents by employees

are generally not sufficient to establish custom or official policy unless approval can be inferred

through supervisory failure to act that amounts to deliberate indifference or "gross negligence."

Turpin v. Mailet, 619 F.2d 196, 200-202 (2d Cir.1980), cert. denied, sub nom. Turpin v. City of

West Haven, 449 U.S. 1016, 101 S.Ct. 577 (1980). Whether the official who allegedly caused

the deprivation of rights possessed "final policy-making authority" is a question of law that must

be resolved according to state law. The court must look to state and local positive law as well as

" 'custom or usage' having the force of law." Once the court has identified those bodies or

officials who have final policy-making authority with regard to the action, it becomes a question

of fact as to whether those bodies or officials caused the violation either by affirmative policies

or by "longstanding practice or custom which constitutes the 'standard operating procedure' of

the local governmental entity." Jett, 491 U.S. at 737, 109 S.Ct. at 2724, quoting Pembaur v.

Cincinnati, 475 U.S. 469, 485-87, 106 S.Ct. 1292, 1301-02 (1986). See also Sekor v. Capwell,

889 F.Supp. 34, 38-9 (D.Conn. 1995).

- 30 -

In the instant case, some if not all of the alleged actions were by persons without final

policy-making authority with respect to the alleged violation of plaintiff's constitutional rights.

Defendants Viccaro and Richardson were not empowered to employ or non-renew the

employment of the plaintiff; defendant Breck was only empowered to recommend non-renewal

of the plaintiff. Any alleged role by Viccaro or Richardson in causing such non-renewal of the

plaintiff's position thus would likewise not be pursuant to a custom or policy. The mere fact that

the District may have then voted for or ratified the plaintiff's non-renewal does not serve as a

basis for liability for the District, absent evidence that the members of the District's Board of

Education who voted to non-renew the plaintiff's employment, and then voted to affirm this

prior vote after a hearing, acted with intent to punish the plaintiff for her "protected speech," or

with a malicious or bad faith intent to injure the plaintiff. Scott-Harris v. City of Fall River, 134

F.3d 427, 440 (1st Cir. 1997), *reversed on other grounds, sub nom.* Bogan v.Scott-Harris, 523

U.S. 44, 118 S.Ct. 966 (1998). Instead of meeting their burden under Monell for establishing

municipal liability under 42 U.S.C. §1983, the plaintiff rely upon conclusory allegations.

However, such allegations were insufficient to support municipal liability of the District, since

"general, indirect and conclusory allegations" are not sufficient to support a claim of a

deprivation of constitutional rights. Hankard v. Town of Avon, 126 F.3d 418, 423 (2nd Cir.

1997). *See also* Avery v. City of West Haven, 2001 U.S. Dist. LEXIS 24394 (D.Conn. 2001),

- 31 -

*affirmed*, 2002 WL 807928 (2nd Cir.2002); <u>Buckley v. City of West Haven</u>, 3:93CV02322

(DJS), slip opinion, pp. 7-9 (D.Conn. 1999).  As such, the plaintiff has not presented to this court

a basis for holding the District liable for the alleged actions.

> **F.     JUDGMENT SHOULD ENTER ON THE PLAINTIFF'S CLAIMS OF
> INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CONTAINED IN
> COUNT THREE BECAUSE THE DEFENDANTS' ALLEGED CONDUCT WAS
> NOT "EXTREME AND OUTRAGEOUS" AS A MATTER OF LAW.**

In order to establish a cause of action for intentional infliction of emotional distress, the

plaintiff must show that: 1) the defendant intended to inflict emotional distress, or that he knew

or should have known that emotional distress was the likely result of his conduct; 2) the conduct

was <u>extreme</u> and <u>outrageous</u>; 3) the defendant's conduct was the cause of the plaintiff's distress;

and 4) the emotional distress sustained by the plaintiff was severe.  <u>Petyan v. Ellis</u>, 200 Conn.

243, 253, 510 A.2d 1337 (1986).  (Emphasis added).  Even if the plaintiff's allegations are

interpreted in a light most favorable to her, they do not rise to the level of "extreme and

outrageous conduct" necessary to support a claim of intentional infliction of emotional distress.

The Connecticut Supreme Court has defined the phrase "extreme and outrageous

conduct": "The rule which seems to have emerged is that there is liability for conduct exceeding

all bounds usually tolerated by decent society, of a nature which is especially calculated to cause,

- 32 -

and does cause, mental distress of a very serious kind." Petyan v. Ellis, 200 Conn. at 254, n. 5,

510 A.2d 1337, *quoting* Prosser and Keeton, Torts (5th Edition, 1984) §12, p. 60. The

Restatement (Second) of Torts §46, comment d (1985) notes that:" ... [l]iability has been found

only where the conduct has been so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community." Whether a defendant's conduct can be characterized as "extreme and

outrageous" must be determined by the *court* in the first instance. Kintner v. Nidec-Torin Corp.,

662 F. Supp. 112, 114 (D. Conn. 1987), *citing* Collins v. Gulf Corp., 605 F. Supp. 1519, 1522

(D. Conn. 1985). *See also* DeLeon v. Little, 981 F. Supp. 728, 737 (D. Conn. 1997). Mere

conclusory allegations are insufficient to support an action for intentional infliction of emotional

distress. Huff v. West Haven Board of Education, 10 F.Supp.2d 117, 122 (D.Conn. 1998).


Courts confronted with claims of intentional infliction of emotional distress in the

employment context have repeatedly dismissed such claims due to the failure to allege

sufficiently extreme and outrageous conduct. In Reed v. Signode Corp., 652 F.Supp. 129 (D.

Conn. 1986), the defendant/employer refused to give the plaintiff a leave of absence upon the

latter's discovery that he had cancer of the lymphoma. Upon his recovery, the plaintiff sought

reinstatement to his previous position which had become vacant. Id. at 132. The court rejected

the plaintiff's claim of intentional infliction of emotional distress, holding that the employer's

- 33 -

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

conduct "hardly exceeds all bounds usually tolerated by decent society" and "cannot be reasonably regarded as outrageous." Id. at 137 (internal citations omitted). Similarly, in Petyan v. Ellis, 200 Conn. 243, 510 A.2d 1337 (1986), the Supreme Court held that the defendant-employer's statement on an unemployment compensation form that the plaintiff had been discharged for fraud and lying was conduct that "could not be considered outrageous." *See also* Kintner v. Nidec-Torin Corp., 662 F.Supp. at 114 (fraudulent misrepresentations regarding plaintiff's prospects and the company's past performance do not rise to level of extreme and outrageous conduct necessary to support intentional infliction of emotional distress claim). The Connecticut Supreme Court recently found that a teacher's allegations that one of the defendants "'made condescending comments to [her] in front of [her] fellow colleagues questioning [her] vision and ability to read'; telephoned the plaintiff's daughter, representing that the plaintiff 'had been acting differently' and should take a few days off from work; and telephoned the police, who came to the school and escorted the plaintiff out of the building to her car" did not (as a matter of law) rise to the level of extreme and outrageous conduct needed to successfully state a claim for intentional infliction of emotional distress. Appleton v. Stonington Board of Education, 254 Conn. 205, 211-212, 757 A.2d 1059 (2000).

In addition, the removal by an employer of a discharged employee from its premises under a security escort as a matter of law will not support a claim of intentional infliction of

- 34 -

emotional distress. <u>Toth v. Square D Co.</u>, 712 F.Supp. 1231, 1238 (D.S.C.1989).  *Cf.* <u>Parsons v. United Technologies Corp.</u>, 243 Conn. 66, 88-9, 700 A.2d 655 (1997).  An employer's failure to comply with performance evaluation procedures and then terminating the employee, which resulted in revocation of employee's visa, was not found to amount to intentional infliction of emotional distress. <u>Collins v. Gulf Oil Corp.</u>, 605 F.Supp. 1519 (D.Conn.1985).  In <u>Hill v. Pinkerton</u>, 977 F.Supp. 148, 160 (D.Conn. 1997), an employee alleged that she received twenty-five cents per hour less than other security guards and that when she brought this to the attention of defendant and began investigating she was subjected to adverse employment conditions, including being transferred to two other locations, being disciplined, and being reprimanded; the court found that such occurrences did not rise to the level of extreme and outrageous conduct. *Cf.* <u>Cowen v. Federal Express Corp.</u>, 25 F.Supp.2d 33, 40 (D.Conn. 1998) (allegations that defendants "fabricated a paper trail" in an effort to cause plaintiff's termination insufficient for claim of negligent infliction of emotional distress).

Furthermore, the courts have even held that an allegation of invidious employment discrimination against a protected class is insufficient in itself to support a claim of intentional infliction of emotional distress because such conduct is not in itself extreme and outrageous; such a "bad" motive in itself does not constitute extreme and outrageous conduct. *See* <u>Huff v. West Haven Board of Education</u>, 10 F.Supp.2d at 123; <u>DeLeon v. Little</u>, 981 F.Supp. 728 (D.

- 35 -

Conn. 1997); <u>Nichols v. Acme Markets, Inc.</u>, 712 F. Supp. 488, 495 (E.D.Pa. 1989), *affirmed*, 902 F.2d 1561 (3rd Cir. 1990)("racial discrimination alone...does not state a claim for intentional infliction of emotional distress"). While racial and gender discrimination is odious and beneath contempt, various federal courts have rejected the argument that conduct taken pursuant to a discriminatory motive is extreme and outrageous *per se*. *See* <u>Martin v. Citibank, N.A.</u>, 762 F.2d 212, 220 (2nd Cir. 1995); <u>Forbes v. Rhode Island Brotherhood of Correction Officers</u>, 923 F. Supp. 315, 329-330 (D.R.I. 1996); <u>Nichols v. Acme Markets, Inc.</u>, *supra*. Instead, a plaintiff alleging intentional infliction of emotional distress "must prove that the conduct is outrageous in character, and not just in motive." <u>Forbes v. Rhode Island Brotherhood of Correction Officers</u>, 923 F. Supp. at 330, *citing* Reinstatement (Second) of Torts, §46, Comment d (1965).

Finally, in <u>Finnucane v. Dandio</u>, 1997 WL 306739, 1997 Conn. Super. LEXIS 1487 (Conn. Super 1997), a little league coach was suspended for disregarding instructions. The plaintiff coach claimed that a suspension without notice or a hearing, along with a little league official's threat to call the police if the plaintiff even stepped onto the field, constituted the intentional infliction of emotional distress. The Connecticut Superior Court granted the defendants' motion to strike due to the failure to allege sufficiently outrageous conduct. <u>Id</u>. at *12. The Superior Court noted that in light of the standard for measuring whether conduct is sufficiently "extreme and outrageous" to support a cause of action, "the plaintiff fails to begin to commence setting forth the factual basis for

- 36 -

his claim of intentional infliction of emotional distress amidst the rough and tumble of everyday life." Id. The Superior Court further noted:

> When a citizen who has been called a son of a bitch testifies that the epithet has destroyed his slumber, ruined his digestion, wrecked her nervous system, and permanently impaired his health, other citizens who on occasion have been called the same thing without catastrophic harm may have legitimate doubts whether he was really upset, or that if he were his sufferings could possibly be so reasonable and justified under the circumstances as to be entitled to compensation.

Id., quoting Prosser and W. Keaton, Torts, (5th Ed. 1984),~§12, p. 69. See also Lefevre v. McDowell, 1998 WL 57769, 1998 Conn. Super. LEXIS 281 (Conn. Super 1998) (non-renewal of coaching contract does not amount to extreme or outrageous conduct).

In the instant case, the plaintiff alleges that the defendants inflicted intentional emotional distress upon her by seeking to non-renew her employment, and by harassing her by making "false accusations of trivial deficiencies as an employee," including placing false and malicious statements regarding her in her personnel file. However, even allowing for an interpretation of the allegations most favorable to the plaintiff, the alleged employment actions cannot be viewed as "conduct exceeding all bounds usually tolerated by decent society." The plaintiff has not alleged facts which would allow for the court to characterize defendants' conduct as "extreme and outrageous." The mere fact that the plaintiff was (allegedly) improperly subject to non-renewal from employment,

- 37 -

and subject to false accusations/harassment, or that the plaintiff disagrees with her evaluations, cannot be viewed as "extreme and outrageous" conduct. Petyan v. Ellis, *supra*; Cowen v. Federal Express Corp., *supra*; Kintner v. Nidec-Torin Corp., *supra*; Collins v. Gulf Oil Corp., *supra*; Appleton, *supra*. "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Parsons v. United Technologies Corp., 243 Conn. at 88-9, 700 A.2d 655. Indeed, the manner of the termination process (i.e., the statutorily prescribed evaluation process, followed by a meeting with Dr. Breck to announce his intention to recommend non-renewal, a vote by the Board of Education, followed by the hearing process as requested by the plaintiff) was consistent with Connecticut General Statutes §10-151 and cannot be viewed as "extreme and outrageous" conduct. Thus, this court should enter judgment as to Count Three.

**G.  JUDGMENT SHOULD ENTER ON THE PLAINTIFF'S CLAIMS OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CONTAINED IN COUNT FOUR BECAUSE THE DEFENDANTS' ALLEGED CONDUCT DID NOT CONSTITUTE SUFFICIENTLY UNREASONABLE OR "PARTICULARLY EGREGIOUS" CONDUCT IN CONJUNCTION WITH THE TERMINATION PROCESS.**

"Negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee,

- 38 -

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior" so as to state a claim for infliction of emotional distress. (Citations omitted; internal quotation marks omitted.) <u>Parsons v. United Technologies Corp.</u>, *supra*. "The dispositive issue . . . [is] whether the defendant's conduct *during the termination process* was sufficiently wrongful such that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) <u>Perodeau v. City of Hartford</u>, 259 Conn. 729, 751, 792 A.2d 752 (2002). (Emphasis added). The termination must be <u>accompanied</u> by additional unreasonable conduct in the <u>manner</u> of termination to support a claim for negligent infliction of emotional distress. <u>Hill v. Pinkerton Security & Investigation Services</u>, 977 F.Supp. 148, 159 (D.Conn.1997); <u>Parsons v. United Technologies Corp.</u>, 243 Conn. at 88, 700 A.2d 655. In light of <u>Perodeau</u>, any *pre-termination* conduct (i.e., harassment, different treatment in the workplace) is clearly not actionable under the tort of negligent infliction of emotional distress. Assuming that the conduct of utilizing the non-renewal process with regard to the future employment of a non-tenured teacher is even viewed as conduct occurring "during the termination process," the alleged conduct still does not come even close to setting forth an actionable claim of negligent infliction of emotional distress.

- 39 -

In order to sustain a claim of negligent infliction of emotional distress, a plaintiff must present allegations of conduct akin to "extreme and outrageous" conduct. Such a requirement is similar if not identical to the pleading and proof requirements for a cause of action for <u>intentional</u> infliction of infliction of emotional distress; "the elements of negligent and intentional infliction of emotional distress differ as to the state of mind of the actor and not to the conduct claimed to be extreme and outrageous." <u>Muniz v. Kravis</u>, 59 Conn. App. 704, 709, 757 A.2d 1207 (2000). *See also* <u>Martin v. American Equity Insurance</u>, 185 F.Supp.2d 162, 165 (D.Conn. 2002). At the very least, the tort of negligent infliction of emotional distress requires "particularly egregious conduct involving a termination." <u>Perodeau v. City of Hartford</u>, 259 Conn. at 755, 792 A.2d 752.

Courts have viewed the "application of the doctrine ... to employment relationships with some alarm. On the job, emotional distress is not an uncommon occurrence." <u>Malik v. Carrier Corp.</u>, 986 F.Supp. 86, 91 (D.Conn.1997). The courts have repeatedly held that that the usual rough and tumble in the work place is insufficient in itself to support a claim of negligent infliction of emotional distress; indeed, "routine employment occurrences" are not as a matter of law so unreasonable as to incur liability for negligent infliction of emotional distress. <u>Hill v. Pinkerton Security & Investigation Services</u>, 977 F.Supp. at 159. The Connecticut Supreme

- 40 -

Court recently explained that the employment relationship itself necessarily involves certain

normal expectations of individuals about conduct, which may involve emotional distress:

> It is clear that such individuals reasonably should expect to be subject to routine
> employment-related conduct, including performance evaluations, both formal and
> informal; decisions related to such evaluations, such as those involving transfer,
> demotion, promotion and compensation; similar decisions based on the employer's
> business needs and desires, independent of the employee's performance; and disciplinary
> or investigatory action arising from actual or alleged employee misconduct. In addition,
> such individuals reasonably should expect to be subject to other vicissitudes of
> employment, such as workplace gossip, rivalry, personality conflicts and the like. Thus, it
> is clear that individuals in the workplace reasonably should expect to experience some
> level of emotional distress, even significant emotional distress, as a result of conduct in
> the workplace.

Perodeau v. City of Hartford, 259 Conn. at 757, 792 A.2d 752.  "Thus, to the extent an

independent tort of negligent infliction of emotional distress is recognized in employment

terminations, it is imperative that it be narrowly circumscribed to cases of severe emotional

distress resulting from egregious conduct by the employer.  Otherwise, this tort will eviscerate

the concept of at-will employment."  Malik v. Carrier Corp., 986 F.Supp. at 92.


For example, it is not patently unreasonable for an employer to remove a discharged

employee from its premises under a security escort.  Toth v. Square D Co., supra; Parsons v.

United Technologies Corp., supra.  An employer's failure to comply with performance

evaluation procedures and then terminating the employee, which resulted in revocation of

employee's visa, was not found to amount to negligent infliction of emotional distress.  Collins v.

- 41 -

LAW OFFICES  •  SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO. 62326

Gulf Oil Corp., *supra.* In <u>Hill v. Pinkerton</u>, where the employee was not satisfied with the way in which her employer investigated her compensation complaint, such routine employment occurrences "were not so unreasonable that the defendant knew or should have known that its conduct involved an unreasonable risk of causing emotional distress that might result in illness or bodily harm." 977 F.Supp. at 159. *See also* <u>Hernandez v. City of Hartford</u>, 30 F.Supp.2d 268, 274 (D.Conn. 1998) (plaintiff's negligent infliction claim based on defendant's conduct in denying her request for reasonable accommodation was insufficient as a matter of law); <u>Cooper v. Dick's Clothing and Sporting Goods, Inc.</u>, 25 F.Supp.2d 59, 61 (D.Conn. 1998)("litany of maladies which one can assume would follow an unexpected loss of employment, but no more" insufficient for claim of negligent infliction of emotional distress); <u>Cowen v. Federal Express Corp.</u>, *supra* (allegations that defendants "fabricated a paper trail" in an effort to cause plaintiff's termination insufficient for claim of negligent infliction of emotional distress). As with the tort of intentional infliction of emotional distress, a discriminatory, retaliatory or otherwise evil motive does cause conduct to become "egregious" or "outrageous." <u>Thomas v. St. Francis Hospital and Medical Center</u>, 990 F.Supp. 81, 92 (D.Conn.1998). *See also* <u>Huff v. West Haven Bd. of Education</u>, 10 F.Supp.2d at 123.

Here, the mere fact that the plaintiff was (allegedly for a retaliatory reason) subject to non-renewal from employment cannot be viewed as "extreme and outrageous" or "particularly

- 42 -

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

egregious" conduct. <u>Petyan v. Ellis</u>, *supra*; <u>Cowen v. Federal Express Corp.</u>, *supra*; <u>Collins v. Gulf Oil Corp.</u>, *supra*. "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." <u>Parsons v. United Technologies Corp.</u>, 243 Conn. at 88, 700 A.2d 655. The termination process (i.e., the statutorily prescribed evaluation process, followed by a meeting with Dr. Breck to announce his intention to recommend non-renewal, a vote by the Board of Education, followed by the hearing process as requested by the plaintiff) was consistent with Connecticut General Statutes §10-151 and cannot be viewed as "extreme and outrageous" or "particularly egregious" conduct. Thus, this court should enter judgment for the defendants as to the plaintiff's claims of negligent infliction of emotional distress contained in Count Four.

> **H.    ANY ALLEGED ACTIONS TAKEN BY THE DEFENDANTS WERE DISCRETIONARY AND WERE EXPRESSLY AND IMPLICITLY GRANTED BY LAW; CONSEQUENTLY, THE PLAINTIFF'S CLAIMS IN COUNTS THREE AND FOUR ARE BARRED BY THE DOCTRINE OF GOVERNMENTAL IMMUNITY AND CONNECTICUT GENERAL STATUTES §52-557n(a) AND (b)(5).**

Regardless of the afore-described abundant deficiencies in the plaintiff's complaint, the plaintiff still cannot maintain this action due to the defendants' governmental immunity. "A municipality's potential liability for its tortious acts is limited by the common law principle of governmental immunity." <u>Ryszkiewicz v. New Britain</u>, 193 Conn. 589, 593, 479 A.2d 793(1984). In addition, the legislature has also enacted Connecticut General Statutes §52-557n,

- 43 -

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

which is designed to limit the liability of persons serving in political subdivisions, local boards, and commissions. Couture v. Plainfield Board of Education, 6 Conn.App. 309, 313, 505 A.2d 432 (1986); Todd M. v. Richard L., 44 Conn.Supp. 527, 537, 696 A.2d 1063 (1995). Since the alleged actions asserted by the plaintiff were discretionary acts conducted in the performance of official duties, the defendants are immune from liability and the plaintiff's claims are therefore barred by the doctrine of governmental immunity.

In essence, if the duties allegedly breached by the governmental employee required the exercise of judgment or discretion in some measure, the defendants are entitled to judgment as a matter of law. Bonamico v. City of Middletown, 47 Conn.App. 758, 762, 706 A.2d 1386 (1998). For the plaintiff to defeat the defendants' motion for summary judgment based on governmental immunity, he must show that the defendants are not entitled to governmental immunity as a matter of law or that genuine issues of material fact exist so that the determination of whether the defendants are entitled to governmental immunity can only be properly determined after findings of fact have been made by the jury. Id.

The basis of the governmental immunity defense for public officials is grounded in policy reasons that provide for limited immunity in the good-faith performance of discretionary duties,

- 44 -

as opposed to ministerial acts. <u>Burns v. Board of Education of City of Stamford</u>, 228 Conn. 640, 645, 638 A.2d 1 (1994). The Connecticut Supreme Court has stated:

> The discretion to be exercised is a sound discretion, yet necessarily it must be a wide discretion in the performance of these governmental duties. Where the discretion has been exercised erroneously, but in good faith through an error of judgment, the public official should not be required to pay damages for his acts. The affairs of government cannot be conducted with absolute exactitude, and public officials cannot be expected to act in all cases with certain judgment. Timidity and doubt would govern their performance of public duty if they acted in the consciousness that personal liability might follow no matter how closely they followed their best discretion.

<u>Wadsworth v. Town of Middletown</u>, 109 A.246, 248, 94 Conn. 435 (1920). Thus, governmental immunity protects public officials who perform tasks "wholly for the direct benefit of the public and are supervisory or discretionary in nature...." <u>Kolaniak v. Board of Education of City of Bridgeport</u>, 28 Conn.App. 277, 281, 610 A.2d 193 (1992).

Discretion means the option to act or not act, as the responsible party deems proper or necessary. Conversely, acts performed in a prescribed manner without the exercise of judgment or discretion are considered ministerial acts. <i>See</i> <u>Evon v. Andrews</u>, 211 Conn. 501, 505, 559 A.2d 1131 (1989). "A ministerial act envisions direct adherence to a governing rule or standard with a compulsory result." 57 Am.Jur.2d, <u>Municipal, County, School, and State Tort Liability</u>, §120, pp. 132-3 (1988). "In short, once it is determined that the act should be performed, subsequent duties may be considered ministerial." <u>Id</u>. at p. 133. "[A] municipal employee has a

- 45 -

LAW OFFICES • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." Evon v. Andrews, supra.

Here, the crux of the plaintiff's case is the non-renewal of the plaintiff's employment as a non-tenured teacher, a discretionary activity that falls within the confines of Connecticut General Statutes §57-557n. The action taken by the defendants in evaluating the plaintiff's employment and recommending non-renewal of employment due to performance related concerns (as expressly permitted by Connecticut General Statutes §10-151(c), based upon the evaluation process provided under Connecticut General Statutes §10-151 et seq.) is a governmental, not a proprietary, function and the defendants are thus immune from liability. Thus, it cannot be credibly argued that the action of the defendants involved the mere execution of a specific duty arising from fixed designated facts. Rather, their conduct necessarily required judgment and discretion vis-à-vis the consideration of the plaintiff's performance as a non-tenured teacher and her performance evaluations. It follows that the governmental immunity defense shields the District and defendants/"public officials" Breck, Viccaro and Richardson from liability in this case and that the plaintiff's claims for damages must fail. In Estate of Gomez v. Larson, 1999 Conn. Super. LEXIS 1535, 1999 WL 417819 at*9 (Conn. Super. 1999), the court held that similar actions by a school district with regard to employee discipline and "false light" were found to be discretionary (as opposed to ministerial, i.e., a duty prescribed by the municipality)

- 46 -

and the doctrine of governmental immunity shielded the City and Board of Education from

liability for the actions of their employees.  The defendants in the instant case are likewise

entitled to judgment as a matter of law as to Counts Three and Four.


**I.    IF THE COURT ENTER JUDGMENT FOR THE DEFENDANTS ON THE PLAINTIFF'S FEDERAL LAW CLAIMS, THE COURT SHOULD DISMISS THE REMAINING STATE LAW CLAIMS FOR LACK OF JURISDICTION.**

As stated in Sections A, B, C, D and E, *supra,* this court should enter judgment for the

defendants on the plaintiffs' federal law claims.  In addition to the arguments asserted in Sections

F, G and H, should the court enter judgment for the defendants on the plaintiff's federal law

claims, the remaining state law claims in the complaint should be dismissed for lack of subject

matter jurisdiction, as they arise under state law.  *See* Federal Rules of Civil Procedure 12(b)(1);

United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130,1139 (1966); Fisher v.

Rosenthal & Company, 481 F. Supp. 53, 57 (N.D. Tex. 1979).  *See also* Carnegie-Mellon

University v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619 1980); DiLaura v. Power Authority

of New York, 892 F.2nd Cir. 73, 80 (1992).


**V.    CONCLUSION**

For the foregoing reasons, this court should grant the defendants' Motion for Summary

Judgment.


- 47 -

LAW OFFICES  •  **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC**  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO.  62326

DEFENDANTS – REGIONAL SCHOOL DISTRICT 13,
WILLIAM D. BRECK, SUSAN L. VICCARO and
ANN RICHARDSON

By:_____
   Mark J. Sommaruga (ct09865)
   Sullivan, Schoen, Campane & Connon, LLC
   646 Prospect Avenue
   Hartford, CT 06105
   Telephone: (860) 233-2141
   Fax: (860)-233-0516
   e-mail: msommaruga@sscc-law.com

- 48 -

# C E R T I F I C A T I O N

This is to certify that a copy of the foregoing has been mailed via U. S. Mail, postage

prepaid, to John R. Williams, Esq., Williams & Pattis, LLC, 51 Elm Street, New Haven, CT

06510, on this _____ day of January, 2004.

Mark J. Sommaruga

- 49 -

LAW OFFICES  •  SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO. 62326