26 NDLR P 26

United States District Court,
D. Connecticut.
Marjorie J. **GALLIGAN,** A/K/A Marjorie Johns-Bunce Plaintiff,
v.
TOWN OF MANCHESTER and Robert Young Defendants.
No. 3:01 CV 2092(GLG).
May 19, 2003.

*OPINION*

GOETTEL, J.

**\*1** In this lawsuit against the defendants, Town of Manchester (the Town) and Robert Young, the plaintiff, Marjorie J. Galligan, claims wrongful denial of accommodation under the Americans with Disabilities Act (ADA), violation of her due process and equal protection rights under the Fourteenth Amendment, retaliation for exercising her First Amendment right of free speech, as well as a violation of Connecticut's "whistle blower" statute, and intentional infliction of emotional distress. She asserts further a claim of breach of contract against the Town only. The defendants moved for summary judgment [Doc. 28] pursuant to Federal Rule of Civil Procedure 56 on all counts of the plaintiff's complaint. Oral argument on the defendants' motion was held in this Court on May 8, 2003. Finding as a matter of law that the plaintiff has failed show that there exist any genuine issues of material fact as to any of the counts in her amended complaint, and for the reasons set forth more fully below, we GRANT the defendants' motion summary judgment in its entirety.

Summary Judgment Standard

The standard for granting a motion for summary is well-established. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of establishing that there is no genuine factual dispute rests with the moving party. See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir.1994). "In ruling on a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of plaintiff, as the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). At the same time, when a motion is made and supported as provided in Rule 56, Fed.R.Civ.P., the non-moving party may not rest upon mere allegations or denials of the moving party's pleadings, but instead must set forth specific facts showing that there is a genuine issue for trial." Zeigler v. Town of Kent, --- F.Supp.2d ----, 2003 WL 1969362, at \*3 (D.Conn. Apr. 27, 2003); see Fed.R.Civ.P. 56(e). In other words, the non-moving party must offer such proof as would allow a reasonable jury to return a verdict in her favor. Anderson, 477 U.S. at 256; Graham v. Long Island R.R., 230 F .3d 34, 38 (2d Cir.2000). The plaintiff must assert more than conclusory statements, conjecture, or speculation to defeat summary judgment. Opals on Ice Lingerie v. Body Lines Inc., 320 F.3d 362, 370 n. 3 (2d Cir.2003). "An opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." *Id.* (internal citations and quotation marks omitted). This Court's "function at this stage is to identify issues to be tried, not decide them." Graham, 230 F.3d at 38. "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

**\*2** Having set forth the legal standard that governs our resolution of the defendants' motion, we set forth now the factual background of this case.

Facts

The plaintiff was a classified civil service employee of the Town at its Water Pollution and Control Authority since 1987. She held the position of Senior Administrative Secretary at the time of her departure from Town employment. During the events at issue here Robert Young was the Water and Sewer Administrator, and her immediate supervisor. [FN1] The plaintiff received commendations several times during her tenure with the Town for her job performance. In the midnineties, however, the plaintiff began to suffer from depression following the death of her father and the death of a close friend. The plaintiff's absences from work apparently prompted a discussion between her and

defendant Young regarding her absenteeism and a decline in her job performance. On June 25, 1996, in response to that conversation, defendant Young sent a memo to the plaintiff noting his concern about her "abnormally high amount of absences" and substandard job performance. He noted also recent improvement in her job performance and that he hoped such improvement would continue but, if she found that her personal affairs made that too difficult, he suggested that she might want to contact Human Resources to discuss a leave of absence. (Def.'s Ex. D, Memo. of June 25, 1996). Two days after this memo, the plaintiff was admitted to Manchester Memorial Hospital, where she spent four days for treatment of her depression. She was not released to return to work until September 3, 1996. Numerous other times throughout 1997 and 1998, the plaintiff missed work. For instance, she suffered carpal tunnel syndrome around June 10, 1997, and was released to resume work around August 12, 1997; on August 19, 1997 she had a concussion and missed work for eight days; she had carpal tunnel surgery on one hand and was out of work from November 10, 1997 to November 18, 1997; she had surgery on the other hand and missed work from March 11, 1998 to March 25, 1998; she had bronchitis and missed work around October 18, 1998. Defendant Young sent several letters or memos to the plaintiff throughout this time period regarding her absenteeism and job performance. (Def.s' Ex. E & Comp. ¶¶ 22, 26, 27, 30, 32, 27). Finally, on November 11, 1999, the plaintiff alleges she was forced to resign her position. She filed the present lawsuit on November 9, 2001. Additional facts will be set forth as necessary.

> FN1. The plaintiff's job duties required her also to perform work for eight section managers within the department.

Discussion
*Count One--ADA Claim*
Count one of the plaintiff's amended complaint alleges that the defendants improperly denied her reasonable accommodation under the ADA. The defendants attack this claim as legally insufficient because the plaintiff failed to file a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") or the Equal Employment Opportunity Commission ("EEOC") within the time period required for such a filing, resulting in her failure to comply with the exhaustion of administrative requirements of the ADA. We agree.

*3 The ADA incorporates these requirements from Title VII. See Doe v. Odili Technologies, Inc., No. 3:96CV1957, 1997 WL 317316, at *2 (D.Conn. May 25, 1997); Forts v. Ward, 621 F.2d 1210, 1215 (2d Cir.1980) (stating that the filing of a timely charge with the EEOC is a prerequisite to the maintenance of a Title VII action in the District Court); 42 U.S.C. § 2000e- 5(e)(1); 42 U.S.C. § 12117(a). When a plaintiff fails to exhaust her administrative remedies, it deprives the Federal Court of subject matter jurisdiction. See Odili Technologies, Inc., 1997 WL 317316, at * 2.

It is undisputed that the plaintiff failed to file anything with the CCHRO and EEOC prior to initiating this federal lawsuit. The plaintiff argues that this Court should excuse her failure to do so because she was mentally incapable of making such a filing. She supports this assertion by citing her four-day inpatient treatment at Manchester Memorial Hospital, followed by "many months of incapacity." (Pl.'s Mem. at 5.) The plaintiff's claim of many months of incapacity is conclusory at best. In fact, at oral argument, she augmented her already asserted conclusory allegations with more conclusory allegations. For instance, she claimed that she was "distraught" during these months of incapacity and that things "were too awful and terrible" for her to even consider filing with the EEOC and that her condition should be sufficient to excuse her failure to do so. Were we to allow this claim to go to a jury based on the porous, conclusory allegations before us, we would open the door for every plaintiff asserting an ADA claim to circumvent quite easily its exhaustion of administrative remedies requirement by claiming merely to have been incapable of doing so. Such a ruling would ignore the express intent of Congress by effectively rendering the exhaustion requirement superfluous. That, we cannot do. [FN2]

> FN2. In her brief and at oral argument, the plaintiff asserted an argument that can best be described as frivolous. If this Court understood her correctly, she attempted to persuade us that an ADA claim, when brought in conjunction with a section 1983 claim, might and should render the ADA's exhaustion requirement excusable. Though

exhaustion of administrative remedies is not required for a section 1983 action, see *Patsy v. Board of Regents of State of Fla.,* 457 U.S. 496, 516 (1982), it is required for an ADA claim. We note that the plaintiff attempts to support this claim, as well as other claims, with case law having nothing to do with the arguments she asserts.

The plaintiff argues further that her prayers for relief make a filing with the EEOC futile in that she seeks "compensatory damages in excess of $15,000, as well as punitive damages, not reinstatement ." (Comp. at 6.) There is no "futility exception" to the requirement that discrimination claimants must exhaust their administrative remedies with EEOC before filing suit in court. See *Talbot v. U.S. Foodservice, Inc.,* 191 F.Supp.2d 637, 641 (D.Md.2002). The plaintiff supports her claim that the ADA provides for a futility exception by citing cases that have absolutely nothing to do the ADA. Again, were this Court to accept the plaintiff's argument, it would be tantamount to rendering null and void the ADA's exhaustion of administrative remedy requirement by encouraging plaintiffs to bypass it by carefully tailoring their demands for relief beyond that which the EEOC can offer.

Because the defendants have shown that there exists no genuine issue of material fact in regard to the plaintiff's ADA claim, and because the plaintiff has offered nothing more than irrelevant case-law and conclusory allegations unsupported by any evidence whatsoever that might lead a reasonable jury to find in her favor, we grant the defendants' motion for summary judgment on count one of the plaintiff's amended complaint.

*Count Two--Due Process*

**\*4** The plaintiff claims that the defendants violated her rights to due process because, as a public employee, she was deprived of a protectable property interest when she was constructively discharged.

A public employee who may be discharged only for cause has a constitutionally protected property interest in her continued employment. *Hunt v. Prior,* 236 Conn. 421, 437 (1996). As a classified civil service public employee, the plaintiff could have been terminated only for just cause, an economic reduction in force, or abolition or consolidation of positions due to reorganization. (Def.'s Ex. G at 24; Comp. ¶ 6.) Therefore, she had a protectable property interest in her continued employment with the Town. See *Hunt,* 236 Conn. at 437.

The sole issue here is whether the plaintiff resigned voluntarily or was constructively discharged. If she resigned voluntarily, her due process claim must fail. "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated.... If [the employee] resigned of [her] own free will even though prompted to do so by events set in motion by [her] employer, [she] relinquished [her] property interest voluntarily and thus cannot establish that the state 'deprived' [her] of it within the meaning of the due process clause." *Geren v. Brookfield Bd. of Educ.,* No. 298605, 1992 WL 310578, at \*7 (Conn.Super. Oct. 13 1992), aff'd, 36 Conn.App. 282 (1994), cert. denied, 232 Conn. 907 (1995) (internal citations omitted); see also *Stone v. University of Maryland Medical System Corp.,* 855 F.2d 167, 172-3 (4th Cir.1988).

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 73 (2d Cir.2000) (internal citations omitted); see *Neale v. Dillon,* 534 F.Supp. 1381, 1390 (E.D.N.Y.), aff'd, 714 F.2d 116 (2d Cir.1982); *Seery v. Yale-New Haven Hosp.,* 17 Conn.App. 532, 540 (1989).

The plaintiff argues that she has created a genuine issue of material fact as to whether she was constructively discharged or voluntarily resigned because she has alleged that defendant Young denied her use of the company telephone for personal phone calls, "yelled" at her, refused her time off, badgered her to do personal work for him and asked her why she was not coming to work. These claims and allegations, however, cannot withstand summary judgment.

The plaintiff admits in her deposition that she used the telephone numerous times from 1996 to 1999 for personal phone calls. She claims, however, that defendant Young denied her such use

"several times," and possibly other times throughout her tenure with the Town, but could not state any facts as to any of the times or events that surrounded defendant Young's denial of her phone usage. The plaintiff claims also that the defendant yelled at her "often." She foreshadows an example of this when she stated in her deposition that defendant Young was a "very moody" and "high strung individual" and that "when things upset his game plan," he did not take it very well. (Def.'s Ex. B at 145.) The plaintiff states further that he would "huff and puff" and get "exasperated" when it took her some time to find files that he wanted, prompting him to yell, "Can't you find anything around here?!" (Def.'s Ex. B at 146.) Regarding time off, the plaintiff admitted that, although she arranged her schedule due to defendant Young's "snotty notes" and her desire to avoid "his wrath," she was never expressly denied time off. (Id.) Insofar as her allegations of defendant Young's badgering her to perform personal work for him, the plaintiff stated at oral argument that she performed only one or two such tasks, and did not provide the Court with any additional facts. Moreover, she asserts that an inquiry in and of itself as to her work attendance constituted harassment because of her mental condition.

*5 We think it apparent that these factual allegations, as a matter of law, fall far short of creating any genuine issue of material fact because they are legally insufficient to sustain an inference that the plaintiff was constructively discharged. For example, she has presented this Court with no evidence that the defendants "intentionally" created any of the working conditions of which she complains. Nor has she asserted any factual allegations or proffered any evidence that could show that such working conditions were so intolerable that a reasonable person would have felt compelled to resign. Our decision is in conformity with other Second Circuit cases. *See Flatery v. Metromail Corp.*, --- F.3d ----, 2002 WL 1476308, (page references unavailable) (2d Cir. Jul. 11, 2002); *Kader v. Paper Software, Inc.*, 111 F.3d 337, 339-40 (2d Cir.1997) (summary judgment proper due to lack of evidence supporting the inference that defendant's conduct was a deliberate creation of working conditions, intolerable or otherwise); *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 360 (2d Cir.1993) (citing *Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159, 1160-61 (3d Cir.1993) (holding allegations that employee felt the quality of his work was unfairly criticized or that the he was subject to hypercritical supervision fell well short of permitting an inference of constructive discharge)); *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir.1985) (stating that whether an employee's working conditions were difficult or unpleasant is not the standard for constructive discharge). Conversely, in claims that have survived summary judgment, sufficient facts were alleged that a defendant engaged in a pattern of harassing, baseless criticisms, *Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 84-6 (2d Cir.1996); or threatened to discharge an employee regardless of the her work performance. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir.1987) abrogated on other grounds, see *Adames v. Mitsubishi Bank, Ltd.*, 751 F.Supp. 1548, 1557 (E.D.N.Y.1990); see also *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369 (5th Cir.1981) (upholding the district court's finding of constructive discharge where a female employee who was several months pregnant quit her job when she was transferred to a warehouse job requiring possible heavy labor).

Here, the plaintiff's allegations are somewhat conclusory and where they are not, they are simply insufficient to create a prima facie claim of constructive discharge. Therefore, the defendants are entiteld to summary judgment on this count.

*Count Three--First Amendment Retaliation*

The plaintiff claims that the defendants subjected her to retaliation because she filed a union grievance against defendant Young. The First Amendment prohibits government employers from punishing its employees in retaliation for the content of their speech on matters of public importance. The plaintiff's First Amendment retaliation claim must demonstrate that: (1) her speech addressed a matter of public concern, (2) she suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that her speech was a motivating factor in the determination. *Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir.2001).

*6 It is clear from the pleadings and from oral argument that the plaintiff, as a matter of law, was not speaking out on a matter of public concern. She argues that the mere filing of a grievance with the union equated to speech touching on a matter of public concern because the union represents public employees. As she stated at oral argument, the plaintiff would like this Court to deem all employee grievances against their employers to be matters of public concern. There is no legal support for such a wide reaching assertion.

As the facts demonstrate, the plaintiff's so-called speech touches on matters wholly related to her

personally and not to those of public concern. For instance, she filed a union grievance for the purposes of (1) addressing defendant Young's "harassing conduct" towards her, (2) clarifying her job duties and, (3) to request a meeting with defendant Young to discuss "her needs" of reasonable accommodation. It is patently obvious that the reasons underlying the plaintiff's grievance, all of which are inherently personal and self-serving, have nothing to do with matters of public concern. Consequently, there exists no genuine issue of material fact as to the first element of the plaintiff's First Amendment retaliation claim [FN3] and, therefore, the defendants' are entitled to summary judgment.

> FN3. We note further that the plaintiff has failed to demonstrate any genuine issues of material fact as to the second element of her claim, which requires the plaintiff to have encountered an adverse employment action and, necessarily, has failed to do the same for the third element.

*Count Four--Equal Protection*

In count four, the plaintiff claims that the defendants violated her federal right of equal protection. Specifically, she claims that the defendants "singled [her] out for unfair and illegal treatment that was not applied to other similarly situated employees" because defendant Young denied her use of the telephone for personal phone calls, denied her time off, yelled at her, badgered her to do personal work for him, and harassed her by asking her why she was not coming into work. We think that the plaintiff waived this claim because she did not address it specifically in her brief or at oral argument. However, to the extent that she did not waive it, we rule as follows.

Because the plaintiff's equal protection claim does not involve a class of any kind, we will assume that her claim is based on a "class of one." The Supreme Court recognizes the validity of this genre of equal protection claim noting that "successful equal protection claims [have been] brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam); see also *African Trade & Information Center, Inc. v. Abromatis,* 294 F.3d 355, 363 (2d Cir.2002); *Zeigler v. Town of Kent,* --- F.Supp.2d ----, No. 00CV1117, 2003 WL 1969362, at *8 (D.Conn. Apr. 27, 2003); *Russo v. City of Hartford,* 184 F.Supp.2d 169, 190 (D.Conn.2002); *Presnick v. Orange,* 152 F.Supp.2d 215, 224 (D.Conn.2001).

*7 Although the Second Circuit has declined to resolve the question of whether the Supreme Court's decision in *Olech* changed the requirement that malice or bad faith must be shown in order to state a valid "class of one" equal protection claim, see *Harlen Associates v. Incorporated Village of Mineola,* 273 F.3d 494, 499-500 (2d Cir.(2001); *Giordano v. City of New York,* 274 F.3d 740, 750 (2d Cir.2001), the Second Circuit has made clear that a plaintiff ... would be required to show that the decision was "irrational and wholly arbitrary," *Giordano,* 274 F.3d at 750 (citing *Olech,* 528 U.S. at 565), in other words, that there was "no legitimate reason for its decision." *Harlen Assocs.,* 273 F.3d at 500.

*Zeigler,* 2003 WL 1969362, at *8.

Moreover, we are to afford governmental decisions "a strong presumption of validity." *Heller v. Doe by Doe,* 509 U.S. 312, 319 (1993). A governmental decision should be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis" for the different treatment. *Id.*

Even assuming that the plaintiff was treated differently, which we are very reluctant to find in light of the scant and somewhat innocuous allegations before us, the plaintiff has not alleged any facts whatsoever that would establish that such treatment was without rational basis. In other words, she has failed to assert facts that the defendants' actions were irrational and wholly arbitrary or without legitimate reason. Therefore, summary judgment in favor of the defendants is proper here.

*Count Five--Conn. Gen.Stat. § 31-51m*

The plaintiff claims that the defendants violated Conn. Gen.Stat. § 31-51m, which is Connecticut's "whistle blower" protection statute. *Campbell v. Town of Plymouth,* 74 Conn.App. 67, 71, 811 A.2d 243, 248 (2002). Section 31-51m provides that the employee "must bring a civil action within ninety days of [her] termination or ninety days of the end of the administrative process. This ninety-day limitation is, however, subject to equitable tolling." *Alston v. Banctec, Inc.,* No. CV020813684S,

2002 WL 31898249, at *2 (Conn.Super.Dec. 12, 2002). The plaintiff admittedly failed to file this state-law claim within the time allotted for doing so. The only issue remaining, therefore, is whether she has presented to this Court any evidence, direct or circumstantial, that would serve to create a genuine issue of material fact as to whether the ninety-day limitation should be tolled. She has presented no such evidence to the Court. Consequently, no genuine issues of material fact exists regarding this claim.

*Count Six--Breach Of Contract*

The plaintiff claims further that the "Town breached its employment contract with [her] by constructively discharging [her] from her position with the [d]efendant Town." [FN4] (Comp.¶ 66.) Because we have determined already, as a matter of law, that the plaintiff's allegations fail to present any genuine issues of material fact regarding her claimed constructive discharge, and that on the facts presented there has been no breach of her employment contract, her breach of contract claim must also fail.

> FN4. The plaintiff purports to bring this claim under Conn. Gen.Stat. § 52-576. We note for the plaintiff that this statute sets forth the statute of limitations for contracts claims-- it does not provide the basis upon which they are founded. See *John H. Kolb & Sons, Inc. v. G and L Excavating, Inc.*, 76 Conn.App. 599, 821 A.2d 774 (2003).

*Count Seven--Intentional Infliction of Emotional Distress*

**\*8** Finally, the plaintiff claims intentional infliction of emotional distress in count seven of her amended complaint. [FN5] The Connecticut Supreme Court has delineated the boundaries of this intentional tort stating,

> FN5. The plaintiff claims that this cause of action is based on Conn. Gen.Stat. § 52-477. We note for the plaintiff that this statute, as its title suggests, is not the means by which to assert an intentional infliction of emotional distress claim. It is a common-law claim. See *Petyan v. Ellis*, 200 Conn. 243, 253 (1986) (recognizing the tort of intentional infliction of emotional distress).

[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

*Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 442-3 (2003) (internal citations and quotation marks omitted).

The plaintiff asserts the same facts here that she asserted as the basis for her due process, equal protection, and breach of contract claims. As we have stated already above, the plaintiff's allegations are scant and somewhat innocuous. We cannot see how any reasonable jury could conclude that defendant Young's conduct, even if it occurred exactly as the plaintiff claims, was extreme and outrageous. See *Mayo v. Yale University*, No. CV000440145S, 2003 WL 21040666, at *3 (Conn.Super.Apr. 16, 2003) (stating, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine.... Only where reasonable minds disagree does it become an issue for the jury.") While the incidents described, albeit briefly, by the plaintiff might have insulted her or hurt her feelings, or displayed bad manners on part of defendant Young, they are insufficient, as a matter of law, upon which to base a claim of intentional infliction of emotional distress. See *Carrol*, 262 Conn. at 442-3.

*Conclusion*

Because the plaintiff has failed to allege any facts that would create a genuine issue of material fact regarding any of the claims asserted in counts one through seven of her amended complaint, we

GRANT the defendants' motion for summary judgment [Doc. 28] as to all counts. The clerk is directed to enter judgment accordingly and to close this case.
SO ORDERED.
D.Conn.,2003.
**Galligan** v. Town of Manchester
2003 WL 21146710 (D.Conn.), 26 NDLR P 26
END OF DOCUMENT

Copr. (C) West 2004 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
Kevin H. **FINNUCANE**
v.
Greg DANDIO et al.
No. CV 0366182.
May 28, 1997.

MEMORANDUM OF DECISION

GRAY.

*\*1* The plaintiff's amended revised complaint alleges breach of contract; tortious interference with the contractual relationship; intentional infliction of extreme emotional distress; negligence; a CUTPA violation; and a violation by the defendants, while acting under color of law, of certain rights guaranteed by the state and federal constitutions and Title 42, Sections 1983 and 1988, of the United States Code.

The defendants moved to strike the complaint on the sole ground that each of the six counts failed to state a cause of action upon which relief may be granted. A review of the factual allegations, which must be accepted as true in considering the motion to strike, leads to the conclusion that the motion must be granted.

The plaintiff was a little league baseball coach with Branford Junior Baseball, Inc. which operated under a charter from Little League Baseball, Inc. Prior to the summer of 1993, the plaintiff verbally agreed with the defendants that he would coach a little league team for the season. In the summer of 1993, the defendants awarded the plaintiff the position of all-star coach. On July 13, 1993, defendants Lucibello and Dandio told the plaintiff to instruct one of his players not to play during a regular season game on July 14th. However, the player and his parents decided that the youngster should play and the plaintiff allowed him to do so.

On July 15, 1993, defendant Sobolewski suspended the plaintiff from coaching for allowing the youngster to play. This suspension occurred without a meeting being called, without affording the plaintiff prior notice nor informing him of the nature of the charges against him and denying the plaintiff an opportunity to appear and answer the charges against him as required under the provisions of article III, § 4 and article IV, § 3 of the league by-laws.

The plaintiff further alleges that the defendants caused a Branford police officer, acting in his official capacity and under color of law, to telephone the plaintiff's wife and threaten to arrest the plaintiff for criminal trespass should the plaintiff appear on the field for the game scheduled for July 16, 1993. This conduct prevented the plaintiff from appearing on the playing field and coaching the game played on that date.

The defendants' motion to strike was accompanied by a memorandum of law in accordance with § 155 of the Practice Book. The plaintiff failed to file a memorandum in opposition to the motion but did present oral argument in opposition to the motion at a hearing held on September 9, 1996. "[D]espite the amendment to the Connecticut Practice Book § 155, the filing of a memorandum in opposition to a motion to strike is mandatory, and the failure to file such may still serve as a ground for granting a motion to strike." *Collins v. Milford Health Care,* Superior Court, Judicial District of Ansonia- Milford at Milford, Docket No. 046662, 14 CONN. L. RPTR. 486 (July 17, 1995, Comerford, J.). Thus a "court could grant the motion to strike on the ground that the [plaintiff] failed to file an opposing memorandum of law." *Centerbank v. GRI Investment Co.,* Superior Court, Judicial District of Waterbury, Docket No. 117702 (May 12, 1994, Sylvester, J.).

*\*2* The court may, however, address the merits of a motion to strike even though the plaintiff did not file a memorandum of law in support of its opposition to the motion. *Honan v. Chamberlain,* Superior Court, Judicial District of Danbury, Docket No. 313387 (August 12, 1994, Mihalakos, J.). In *Fitzpatrick v. East Hartford B.P.O. Elks,* Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 580905, 3 CONN. L. RPTR. 163 (January 25, 1991, Clark, J.), the court held that "[a]lthough a timely opposing memorandum is required, the failure to so file it can be waived by

the trial court."

"The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted. In ruling on a motion to strike the court is limited to the facts alleged in the complaint ... [and] must construe the facts in the complaint most favorably to the plaintiff." (Citations omitted.). *Waters v. Autuori,* 236 Conn. 820, 825, 676 A.2d 357 (1996). "The trial court may not seek beyond the complaint for facts not alleged ..." *Cavallo v. Derby Savings Bank,* 188 Conn. 281, 285-86, 449 A.2d 986 (1982). "The trial court, in passing upon the defendants' motion, properly [can consider] only [those grounds specified]." *Blancato v. Feldspar Corporation,* 203 Conn. 34, 44, 522 A.2d 1235 (1987).

The plaintiff's allegation of breach of an oral contract specifies neither a proper party in interest nor the consideration necessary for a binding contract. The corporate entities are not named as defendants. Nor are the individual defendants cast as agents, servants or employees of Branford Junior Baseball, Inc. and/or Little League Baseball, Inc. acting within the scope of their employment. Moreover, if the plaintiff reasonably could be considered an employee, in the absence of any consideration, it would be an at-will hiring terminable by either party. The plaintiff could be discharged at any time so long as the discharge was not against public policy. There is no allegation of breach of contract in violation of public policy.

"In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties ... The mutual understanding must manifest itself by a mutual assent between the parties." (Citations omitted.). *Steinberg v. Reding,* 24 Conn.App. 212, 214, 587 A.2d 170 (1991). Also, the contract "must be definite and certain as to its terms and requirements." *Augeri v. C.F. Wooding Co.,* 173 Conn. 426, 429-30, 378 A.2d 538 (1977). Basic to the existence of any valid contract is the necessity of valid consideration. *State National Bank v. Dick,* 164 Conn. 523, 529, 325 A.2d 235 (1973) (the doctrine of consideration is fundamental to the law of contracts; where there is no consideration, an executory contract is unenforceable). The failure to allege facts sufficient to show the existence of a contract requires the court to grant the motion to strike this count.

*\*3* The second count of the complaint incorporates the allegations of count one and further alleges tortious interference with the contract. Our courts have "long recognized a cause of action for tortious interference with contract rights or other business relations." *Kelley Property Development, Inc. v. Lebanon,* 226 Conn. 314, 340 n. 30, 627 A.2d 909 (1993). "The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendants' knowledge of that relationship, the intent to interfere with it, and the consequent actual loss suffered by the plaintiff." *Collum v. Chapin,* 40 Conn.App. 449, 452, 671 A.2d 1329 (1996); *Hart, Nininger & Campbell Associates, Inc. v. Rogers,* 16 Conn.App. 619, 629, 548 A.2d 758 (1988). The plaintiff however is required "to plead and prove at least some improper motive or improper means." *Kakadelis v. DeFabritis,* 191 Conn. 276, 279, 464 A.2d 57 (1983); *Blake v. Levy,* 191 Conn. 257, 262, 464 A.2d 52 (1983).

The motion to strike count two is granted for the same reasons stated regarding count one. Moreover, there is no factual allegation to support a conclusion of tortious interference by a third party with the contractual parties. "In Connecticut a party to a contract cannot be liable for tortious interference with that contract. *Urashka v. Griffin Hosp.,* 841 F.Supp. 468, 475 (D.Conn.1994); also, see *Multi-Service Contractor, Inc. v. Vernon,* 193 Conn. 446, 451, 477 A.2d 653 (1984) ("there can be no intentional interference with contractual relations by someone who is directly or indirectly a party to the contracts").

The allegations in count two fail to assert facts which would give rise to a contract between the plaintiff and the baseball league organizations. "The burden rests on the plaintiff to allege a recognizable cause of action, and it is not sufficient that a complainant refer to a basis of liability by some distinctive name ... the complainant is required to set forth facts upon the basis of which, if true, he may be able to establish in law a right to relief ..." *Research Associates, Inc. v. New Haven Redevelopment Agency,* 157 Conn. 587, 588, 248 A.2d 927 (1968).

The third count alleges intentional infliction of emotional distress. The factual basis of this claim is that the defendant Sobolewski telephoned the plaintiff to suspend him from his coaching duties after the plaintiff disregarded instructions from defendants Lucibello and Dandio not to allow a youngster to play in one of the scheduled games. During the telephone call, the plaintiff protested that he could not be suspended without being given notice and a hearing.

Sobolewski replied, "Oh, no? Watch me." The plaintiff further claims that subsequent to the call from Sobolewski, the defendants caused a police officer to telephone the plaintiff's wife and "threaten that

if the plaintiff so much as stepped onto the field at the all-star baseball game ..." he would be arrested for criminal trespass. These actions by the defendants are alleged to be extreme and outrageous and carried out intentionally with the knowledge that "such actions probably would cause the plaintiff to suffer extreme emotional distress."

*4 A cognizable claim of intentional infliction of emotional distress must establish: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe." *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury." *Parsons v. Sikorsky Aircraft Division,* Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 280394 (March 1, 1996, Levine, J.), quoting *Reed v. Signode Corp.,* 652 F.Supp. 129, 137 (D.Conn.1986).

A "more appropriate manner of testing whether the conduct and emotional distress reached the threshold required by the rule would be by summary judgment ... The court under a motion for summary judgment is able to consider the actual facts rather than those that could be proved under the allegations of the complaint construed in a manner most favorable to the plaintiff." *Mellaly v. Eastman Kodak Co.,* 42 Conn.Supp. 17, 19 n. 3, 597 A.2d 846 (1991).

Rudeness, insulting behavior, poor manners or slights that cause hurt feelings are not what rend society's fabric and give rise to an action for intentional infliction of emotional distress. Generally, "it is the intent to cause injury that is the gravamen of the tort ..." *DeLaurentis v. New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991). For liability to exist, the threshold for behavior begins "where conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Whelan v. Whelan,* 41 Conn.Supp. 519, 523, 3 CONN. L. RPTR. 135 (1991), quoting 1 Restatement (Second), Torts § 46, comment (d), p. 73.

Measured by this standard, the plaintiff fails to begin to commence setting forth a factual basis for his claim of intentional infliction of emotional distress amidst the rough and tumble of everyday life. "As Prosser and Keeton explain, 'when a citizen who has been called a son of a bitch testifies that the epithet has destroyed his slumber, ruined his digestion, wrecked his nervous system, and permanently impaired his health, other citizens who on occasion have been called the same thing without catastrophic harm may have legitimate doubts that he was really upset, or that if he were his sufferings could possibly be so reasonable and justified under the circumstances as to be entitled to compensation. W. Prosser & W. Keeton, [Torts (5th Ed.1984) § 12,] p. 59.' " *Whelan v. Whelan, supra,* at 522, 588 A.2d 251.

*5 The plaintiff's fourth count alleges violations of certain rights guaranteed protection under the fourth and fourteenth amendments of the federal constitution. He claims that the method of his termination deprived him of procedural due process; that he was denied his right to peacefully assemble; and, further, that he was deprived of his liberty interest in continuing to serve as the little league coach. The factual basis for these claims, discussed earlier, does not warrant repeating. The direct answer to the plaintiff's factual allegations is that there is a complete failure to set forth any facts that would tend to show a state-created entitlement as to his coaching position and subsequent suspension or any state action regarding the alleged denial of his right to peacefully assemble. Our not too distant history has graphically illustrated that such a right must be asserted before it can be cognizably denied. Title 42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, or any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law."

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Wilson v. Hryniewicz,* 38 Conn.App. 715, 719-20, 663 A.2d 1073, cert. den., 235 Conn. 918, 665 A.2d 610 (1995), quoting *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1987).

"These two elements denote two separate areas of inquiry: the plaintiff must prove a constitutional or statutory violation and that violation must have been committed by the defendant acting under color of law." *Wilson v. Hryniewicz, supra,* at 720, 663 A.2d 1073. "Section 1983 is not itself a

source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred ... The first step in any such claim is to identify the specific constitutional right allegedly infringed." _Albright v. Oliver_, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114, ----, 127 L.Ed. 807 (1994).

"To create a constitutionally protected liberty interest, a state regulation must employ language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must be employed' ... It is only through the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates that a liberty interest arises." _Silano v. Sag Harbor Union Free School Dist. Bd._, 42 F.3d 719, 724 (2d Cir.1994).

**\*6** After alleging a contract between private parties, the plaintiff attempts to elevate an alleged breach of that contract to the dimension of a violation of constitutional rights. The due process clause protects something more than an ordinary contract right. Its protection "is sought in connection with a state's revocation of a status, an estate within the public sphere characterized by a quality of either extreme dependence ... or permanence ... or sometimes both ..." (Emphasis omitted; footnote and internal quotation marks omitted.) _S & D Maintenance Co., Inc. v. Goldin_, 844 F.2d 962, 966 (2d Cir.1988). "A contract dispute ... does not give rise to a cause of action under section 1983." _Costello v. Town of Fairfield_, 811 F.2d 782, 784 (2d Cir.1987).

Nothing in the plaintiff's statement of facts even remotely indicates any state sponsored or authorized action, even by way of condonation, resulting in a violation of rights protected by " 'the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, [and which] applies to acts of the states, not to acts of private persons or entities.' _Rendell-Baker v. Kohn_, 457 U.S. 830, 837, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)." _State v. Holliman_, 214 Conn. 38, 43, 570 A.2d 680 (1990). The fourteenth amendment to the United States constitution guarantees that "[n]o state shall ... deprive any person of life, liberty or property, without due process of law ..." U.S. Const., amend. XIV. Its purpose is to protect a person from "conduct that may be fairly characterized as 'state action.' " _State v. Holliman, supra_, quoting _Lugar v. Edmonson Oil Co._, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Section 1983 of 42 U.S.C. serves as a vehicle or "method for vindicating federal rights elsewhere conferred ... [thus requiring that the] first step in any such claim is to identify the specific constitutional right allegedly infringed." _Albright v. Oliver, supra._ The various liberty interests protected by the constitution are many and often have been delineated as: "freedom from bodily restraint ... the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship god according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men." _Board of Regents v. Roth_, 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

"[T]he law affords constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, education ... Our cases recognize the right of the individual ... to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child ... Our precedents have respected the private realm of family life which the state cannot enter ... These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life." _Planned Parenthood of Southeastern PA. v. Casey_, 505 U.S. 833, 851, 112 S.Ct. 2791, 123 L.Ed.2d 674 (1992).

**\*7** The liberty interests protected from governmental intrusion by the constitution would clearly be trivialized, if not denuded of meaning, were a court to accept the plaintiff's claims as constitutional in character or dimension. The claim that his right to assemble and to speak freely were abridged because of the message given to the plaintiff by his wife, purportedly from a Branford police officer, is void of any facts that would support a reasonable belief that an officer was acting under color of law. One test of his belief would have been to exercise his rights by going where he had every right to be as a member of the public--the public grounds where the all star game was held. Instead, the plaintiff claims that the message given to him by his wife deprived him of his right to peacefully assemble in the public spaces because the plaintiff chose not to exercise rights by staying away from the town's public grounds.

The plaintiff's failure to exercise his rights illustrates the failure to state allegations necessary to establish a nexus between protected rights and a deprivation of those rights under color of law.

Inaction, without more, cannot beget state action in deprivation of plaintiff's rights. The factual allegations of the fourth count are insufficient to state a cause of action and must be stricken.

The fifth count alleges a CUTPA violation. "CUTPA, by its own terms, applies to a broad spectrum of commercial activity ... The entire act is remedial in character ... and must be liberally construed in favor of those whom the legislature intended to benefit." *Fink v. Golenbock,* 238 Conn. 183, 212-13, 680 A.2d 1243 (1996). "The statute thus applies, by its terms, only to parties that have engaged in the advertising, selling, renting, leasing or distribution of goods." *Burkert v. Petrol Plus of Naugatuck, Inc.,* 216 Conn. 65, 85, 579 A.2d 26 (1990).

None of the plaintiff's factual allegations fall within the ambit of Section 42-110a(4) of the General Statutes nor has the court found any decision or line of reasoning to support a claim that CUTPA was intended to provide relief under the facts of this case. While it is beyond serious dispute that the Act was intended to provide protection to a class of individuals much broader than consumers, *Fink v. Golenbock, supra,* at 215, 680 A.2d 1243, the motion to strike the fifth count is granted because the plaintiff failed to allege any "acts performed in the course of trade or business."

The sixth count of the complaint alleges that the defendants were negligent. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *RD Constructors, Inc. v. Fusco Corp.,* 231 Conn. 381, 384, 650 A.2d 153 (1994). "The existence of a duty is a question of law and [o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." *RK Constructors, Inc. v. Fusco Corp., supra.*

*8 "The elements of duty and breach require that a defendant's conduct constitutes fault in the performance of a duty owed to a plaintiff." *Coste v. Riverside Motors, Inc.,* 24 Conn.App. 109, 112, 585 A.2d 1263 (1991). Merely stating, as he has in his complaint, that "the defendants acted negligently ... and caused the plaintiff to suffer ... injuries," falls several elements short of the table. The failure to allege a duty owed and a breach of that duty is insufficient for fact pleading. "The burden rests on the plaintiff to allege a recognizable cause of action, and it is not sufficient that a complaint refer to a basis of liability by some distinctive name ... the complainant is required to set forth facts upon the basis of which, if true, he may be able to establish in law a right to relief ..." *Research Associates, Inc. v. New Haven Redevelopment Agency,* 157 Conn. 587, 588, 248 A.2d 927 (1968).

The motion to strike the sixth count is granted.

Conn.Super.,1997.

**Finnucane** v. Dandio
1997 WL 306739 (Conn.Super.)
END OF DOCUMENT

Copr. (C) West 2004 No Claim to Orig. U.S. Govt. Works