UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN BROWN | : | |
| | : | |
| VS. | : | NO. 3:03CV00420 (MRK) |
| | : | |
| REGIONAL SCHOOL DISTRICT 13 | : | |
| WILLIAM D. BRECK, | : | |
| SUSAN L. VICCARO, and | : | |
| ANN RICHARDSON | : | MARCH 7, 2004 |

**PLAINTIFF'S LOCAL RULE 56 STATEMENT**

A.    **RESPONSES TO DEFENDANTS' CLAIMS OF FACT**

1. Agree.

2. Agree.

3. Agree.

4. Agree.

5. Agree.

    a. Agree.

    b. The document speaks for itself. Disagree with the attempt to characterize it.

    c. Disagree. Although the document uses the word "appeal," the procedure delineated there is not a true "appeal". (Attachment A, p. 11)

      d. Disagree. (Attachment C, last 2 pages; Attachment E, pp. 5-12; Attachment G; Attachment J; Attachment M, pp. 5-6)

  6. Agree.

  7. Agree.

  8. Agree.

  9. Agree.

      a. Agree.

      b. Agree that the document makes the statement. Otherwise, disagree. (Plaintiff's interrogatory responses.)

      c. Agree the document makes that statement.

      d. Agree the document makes those statements.

      e. Agree the document makes those statements.

      f. Agree.

  10. Agree the memo was sent and makes those statements.

  11. Agree that Viccaro had those assignments.

  12. Agree that the plaintiff received the document and that the copy submitted is an accurate copy.

      a. Agree the document makes those claims. Otherwise, disagree. (See Attachment E; Plaintiff's interrogatory responses.)

      b. Agree.

13. Agree that nonrenewal was not recommended. As to the motivation, there is no evidence to support the defendants' self-serving claims.

14. Agree.

15. Agree the memo made those allegations. Otherwise, disagree. (Attachment G; plaintiff's interrogatory responses.)

16. Agree.

17. Agree that the meeting took place and that the memo was written. Otherwise, disagree. (Plaintiff's interrogatory responses.)

18. Agree.

19. Agree that the plaintiff wrote a memo. Disagree with the defendants' attempted characterization of its contents. (Attachment J)

20. Agree except for the word "incidents," which should be "allegations". (Attachment L)

21. Agree.

22. Agree that plaintiff received the memo; agree that the memo made such allegations; disagree with any suggestion that those allegations were accurate. (Attachment N; plaintiff's interrogatory responses)

23. Agree.

24. Agree that defendants Richardson and Viccaro recommended that the plaintiff be denied tenure. Otherwise, disagree. (Plaintiff's interrogatory responses)

25. Agree with first three sentences and with last clause of last sentence. Otherwise, disagree. (Plaintiff's interrogatory responses)

    a. Agree that defendant Breck makes those claims. However, he claims he had no personal knowledge of the plaintiff's performance and, therefore, based upon that claim, the balance of this subparagraph cannot be true and the plaintiff disagrees with it.

    b. Disagree. (Plaintiff's interrogatory responses; plaintiff's deposition.)

    c. Disagree. (Defendants offer no evidence to support this claim, although they have exclusive control of all evidence on the topic, and defendants make no claim that any such persons were similarly situated to the plaintiff.)

26. Agree.

    a. Disagree. (Attachment I; Attachment O; Fax from Attorney Rosenblatt transmitted to defendant at 11:23 a.m. on March 3, 2003)

27. Agree.

    a. Disagree. (Defendants offer no evidence to support this claim, although they have exclusive control of all evidence on the topic, and defendants make no claim that any such persons were similarly situated to the plaintiff.)

28. Agree.

29. Disagree with first sentence. (Attachment R) Otherwise, agree.

26 (*sic*). Agree.

27 (*sic*).  Agree.

B.    **PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

1. On November 12, 2002, Attorney Leon M. Rosenblatt wrote to the defendant Viccaro a "personal & confidential" letter informing her that the plaintiff had associated herself with him in an effort to put an end to harassment in the workplace.  (Attachment I)

2. That letter was received by defendant Viccaro on November 13, 2002.  (Ibid.)

3. Defendant Viccaro did not reply to that letter.  Instead, she gave it to defendant Breck, who responded to Attorney Rosenblatt, with copies to defendant Viccaro and Attorney Thomas Sullivan, on November 18, 2002.  (Exhibit 1)

4. Attorney Sullivan represented the defendants in the termination proceedings subsequently initiated against the plaintiff.  (Attachment R)

5. At 11:23 a.m. on March 3, 2003, defendant Viccaro received a fax from Attorney Rosenblatt requesting the plaintiff's entire personnel file.  (Exhibit 2)

6. Defendant Viccaro replied to that fax with a fax which she transmitted to Attorney Rosenblatt at 3:06 p.m. on March 3, 2003.  (Exhibit 3)

7. In her fax to Attorney Rosenblatt, defendant Viccaro stated that the plaintiff's personnel file would be made available to him on March 5, 2003.  (Ibid.)

8. Also on March 3, 2003, defendant Breck prepared an unsigned letter to the plaintiff ordering her to appear at a meeting on March 5, 2003, "to discuss my decision to recommend to the Region 13 Board of Education that your contract of employment not be renewed...." (Attachment O)

9. It is reasonable to infer that defendant Breck's unsigned letter to the plaintiff was prepared after receipt of Attorney Rosenblatt's morning fax on March 3, 2003. (Attachment O; Exhibit 2)

10. It was not until March 10, 2003, that defendant Breck informed the plaintiff that he would recommend nonrenewal of her contract. (Attachment O)

11. Plaintiff's monthly and quarterly and annual evaluations in 1999 and 2000 were outstanding. (Attachment B)

12. Plaintiff's evaluations throughout her second year, 2000-01, all were excellent. (Attachment C)

13. Defendant Viccaro became the plaintiff's primary supervisor in the fall of 2001 and commenced a pattern of unfair and unequal treatment of the plaintiff which included false accusations and blaming the plaintiff for the failures or wrongdoings of others. (Attachment E, including plaintiff's five-page response)

14. On March 4, 2002, in response to defendant Viccaro's unfair scapegoating of the plaintiff, the plaintiff's colleague, Laurie King, wrote her:

> I have worked with Susan within the special education department at
> Strong School for the past three years. I have worked closely with her

> this year, and I have gotten to know her better both personally and professionally. Susan takes her work very seriously and exerts a great deal of time and effort to her position on the Integrated Day team. She skillfully supports her students across the two grade levels working as a team player with her colleagues on that team. She is conscientious about adhering to her students' IEP's, ensuring that the proper modifications are implemented across subject areas. I have witnessed Susan's flexibility on many occasions, adjusting her schedule even if it meant giving up her personal planning periods to consult with teachers of her special education students. Susan has worked tirelessly on test reports, staying far beyond the regular school hours when necessary. Susan makes a concerted effort to communicate with the teacher assistants, meeting with them individually and as a team, to ensure that students' plans are explained clearly and all questions are answered. Susan takes her work seriously and demonstrates her professionalism in interactions with her principal, fellow teachers, parents, and students. I enjuoy working with Susan very much and feel she is a true asset to the Special Education Department at Strong Middle School.

(Id., King letter)

    15. In March of 2002, also in response to the scapegoating of the plaintiff by defendant Viccaro, three of the plaintiff's fellow teachers – Frank Lerose, Lissa Eade and Nancy Earls – wrote to defendant Viccaro:

> We are writing in support of Susan Brown who has served as the Special Education teacher for the Green Team for the past two and a half years. During the past few months, she has been caught in a series of unfortunate circumstances and in order that her credibility as a professional be maintained, we want to recount our experience of working over time with Susan and the students she services.
>
> First and foremost, Susan is an enthusiastic advocate for her students. Her persistence and vigilance have even earned the affectionate nickname of "The Haunt." To say that she is in daily communication with each of us is a gross understatement. She catches us in hallways, at lunchtime and because she is usually here until 5:00,

often after school. The intent of the conversation is always the same, to do whatever is necessary in order for her students to meet continued success. Working with a team that is creative, energetic and often moving in many directcions can be a challenge but Susan's sense of humor and enthusiasm keep us grounded and focused.

Susan's role demands communication on a daily basis with a multitude of people and on a variety of levels. She assumes contact with parents, students, aides, the building principal, her counterparts on the other teams, and her own team members. Most of her parent contact is early and preventative. She heads off problems almost before they arise. She is sensitive to the needs of the aides and is constantly looking for ways to increase their involvement with students. Lastly, she is an active and integral part of our team in every way.

This has been a difficult year for Susan and we have tried to offer her support as she struggled with some situations which were out of her control. In spite of these difficulties, she has conducted herself as a consummate professional who cares about her students, her team and her school community. As a team, we respect her dedication and her integrity and look forward to working with her as we continue our mission of providing quality educational experiences for all students.

(Id., Letter of Lerose, Eade and Earls)

16. Special education teachers were habitually absent from department meetings, to the actual knowledge of defendant Viccaro. Only the plaintiff was reprimanded for being absent, however, and the one occasion when she was absent was, as defendant Viccaro well knew, for medical reasons. Nevertheless, only the plaintiff was reprimanded. (Attachment G)

17. Defendant Viccaro continually held the plaintiff to different and higher standards than she did other teachers in the same position. (Ibid.)

8

18. Plaintiff's professional colleagues observed and commented upon the disparate treatment to which the plaintiff was regularly subjected by the defendants. (Ibid.)

19. Only the plaintiff, out of all the teachers under Viccaro's control, was required to go to the Central Office to review materials. (Ibid.)

20. Only the plaintiff was subjected to abuse for following district procedures to turn to her supervisors for supervision and guidance. (Ibid.)

21. Clerical and support staff at Strong School, being mostly neighbors in the same small town, habitually gossiped and breached confidentiality regarding special education students. When the plaintiff objected to such improprieties, she was treated rudely by the staff members. Then defendant Viccaro knowingly blamed the plaintiff for the misconduct of those clerical and support staff members which the plaintiff was powerless to prevent or control. (Ibid.)

22. Prior to the occasion when defendant Viccaro reprimanded only the plaintiff for missing a meeting, the plaintiff had gone three years without missing a single meeting. (Attachment R, 5/20/03 transcript, p. 92)

23. Plaintiff had to miss a meeting because she was in the midst of another important meeting, this one a lengthy after-hours meeting with a special education student. (Id., pp. 92-93)

24. The plaintiff is the only teacher ever required to report to the central office to review documents as punishment for missing a meeting. (Id. pp. 136-37)

25. Defendant Viccaro considered this to be a disciplinary action against the plaintiff. (Id. p. 138)

26. As recently as the end of October, 2002, defendant Richardson observed the plaintiff teaching and wrote a report in which she commended the plaintiff in every category and made only one recommendation: that the plaintiff keep doing exactly what she was doing. (Id., 5/21/03 Tr. pp. 48-51)

27. On March 3, 2003, defendant Breck received a letter from three of the tenured teacher members of the plaintiff's teaching team at Strong School, advising him that the team's students had scored impressive gains on the Connecticut Mastery Tests which they attributed to the plaintiff's outstanding teaching. (Id. pp. 78-86)

28. Dr. Debra Brown-Norco, a pediatrician who was the parent of one of the plaintiff's students in 2002-03, considers the plaintiff responsible for dramatic improvement in the educational performance of her daughter. (Id. pp. 101-04)

29. Janice Ann Wenzel, a tenured teacher at Strong School who worked closely with the plaintiff, found the plaintiff to be an excellent teacher whose skills did not decline in any way during the years she taught at Strong. (Id. pp. 107-14)

30. Attorney Fred DeCaprio, who is the Chief Public Defender for the Hartford Judicial District, is the parent of one of the plaintiff's students. He considers the plaintiff to be "a terrific teacher" in every respect. (Id. pp. 115-17)

31. Linda Eade, a tenured teacher at Strong School and one of the plaintiff's colleagues, testified that she feels "very strongly that Sue has been an incredible contribution to our team. She's made a tremendous difference....[T]he students that she has worked with have been extremely successful and these were...students with some very difficult learning problems....[S]he has done a great job of really putting the students first and trying to assist every student in being successful. And she's worked very well with our team...and...as a result her students have been extremely successful. And the PPTs I sat in, every single parent, especially those for the eighth grade, acknowledged Sue for the difference she has made in their child's success at Strong School...." (Id. pp. 122-25)

32. Nancy Earls, another tenured teacher at Strong School and one of the plaintiff's colleagues who has had daily professional contact with her, testified that the plaintiff "is a consummate advocate" for her special education students. She has found the plaintiff to be an "excellent" educator and communicator who sets high standards for her students and enables them to meet those standards. (Id. pp. 142-45)

33. Ms. Earls personally observed defendant Viccaro picking on the plaintiff and subjecting her to a degree of disparagement and hostility which Ms. Earls had never seen with any other teacher.  (Id. pp. 154-56, 160-62)

34. Ms. Earls also has observed Viccaro and Richardson attempting to trap the plaintiff by giving her contradictory instructions and subjecting her to criticism or discipline when she follows one set of instructions rather than the other.  (Id. p. 163)

35. In February of 2000, defendant Viccaro made the following written statement concerning the plaintiff:

> I first met Susan two years ago when she interviewed for a position at Memorial School....One year later I had another opening and was pleased to see Susan in the candidate pool.  She was the unanimous choice of the committee.
>
> Susan...has outstanding teaching skill as well as a broad knowledge of the law.  She communicates effectively with students, staff, and parents.  She demonstrates initiative and works well independently as well as part of a team.  She has been professional in all of her dealings throughout every aspect of her job.
>
> Susan is warm, has a good sense of humor and appears at ease in a variety of settings and with a variety of people.  She is flexible, able to think on her feet and knows when to ask for help.  She enjoys the students she works with and holds them to high expectations....I recommend her without reservation....

(Exhibit 4)

36. In March of 2000, defendant Richardson wrote that the plaintiff had been teaching special education in her building for that academic year and that during that year "I have had frequent opportunities to review her skills and oversee her hard

work with students. She is an individual with a love for students, making her a fine teacher. This quality is special in that it is the basis for her caring nature and sound teaching techniques." She continued:

> This teacher has excelled within our program and is part of a team of teachers that makes things happen. This professional is very comfortable working in an inclusion type classroom, because her strong teaching techniques help her to instruct within a wide variety of instructional settings. As a firm and fair individual, she believes in creating situations that enable all students to succeed. Her classroom is always busy with hands-on activities. She is an advocate for her students, working with other staff members tirelessly to ensure success for everyone....She has a keen awareness of the educational field and is a hardworking and reliable instructor.

(Exhibit 5)

37. The defendants posted the plaintiff's job in the schools and newspapers, advertising for her replacement, before even completing her nonrenewal hearing. (Exhibit 6, ¶¶ 2, 3c and attachment)

38. The defendants subjected the plaintiff to abusive and disrespectful treatment on a virtually constant basis. (Id. ¶ 3)

39. In April of 2001, defendant Richardson stated publicly concerning the plaintiff that she was going to "have her head." (Id. ¶ 3a)

40. Although defendant Viccaro's usual method of communicating with teachers was orally, she treated the plaintiff differently and placed every communication in writing. (Ibid.)

13

41. After Attorney Rosenblatt's letter of November 12, 2002, the level of hostility directed against the plaintiff by the defendants noticeably increased. (Ibid.)

42. Defendant Viccaro ordered the plaintiff to make alterations on test reports which she did not require of other teachers. (Ibid.)

43. Defendant Viccaro required the plaintiff to submit test reports within 48 hours, whereas she did not impose that requirement on other teachers. (Ibid.)

44. The defendants subjected the plaintiff to constant, daily, petty harassment. (Id. ¶ 3c)

45. All of the negative memos in the plaintiff's personnel file were not present in that file when it was checked in March of 2002. They were backdated and placed there in March of 2003. (Id. ¶ 3d)

46. Defendant Richardson was the person who evaluated special education teachers in her building. The plaintiff was treated differently from them in being evaluated by defendant Viccaro. (Exhibit 7, pp. 30, 51)

47. The defendants Viccaro and Richardson constantly badgered and demeaned the plaintiff, making false accusations and berating the plaintiff when she would not "confess" to those false accusations. (Id. pp. 86-88)

48. Defendant Viccaro admitted to the plaintiff's union representative that she was treating the plaintiff differently from all other teachers with respect to disciplinary matters. (Id. p. 88)

49. Defendants Viccaro and Richardson constantly cited the plaintiff, in memos and in meetings, for things which were done by all the teachers in the building; but only the plaintiff was criticized for them. (Id. p. 97)

50. Defendant Breck told the plaintiff that the reason he was asking the Board of Education to refuse to renew her contract was because he had been asked to do so by defendants Viccaro and Richardson. (Id. p. 103)

51. Defendant Richardson has several times actually yelled at the plaintiff in the school hallways and ordered her in to meetings in the presence of support staff and colleagues. (Id. pp. 118-19)

52. Defendant Viccaro would summon the plaintiff to meetings and force her to sit in the waiting area in full view of colleagues and support staff, as a way of letting them know the plaintiff was being disciplined. (Id. p. 119)

53. No other teacher at Strong School was subjected to the sort of treatment inflicted upon the plaintiff. No other teacher was constantly called into meetings. No other teacher was scrutinized the way the plaintiff was. (Id. p. 122)

54. Whereas defendant Viccaro disciplined the plaintiff for missing a single meeting, another teacher who missed the very same meeting was not disciplined in any way, yet the plaintiff had had a legitimate reason for missing the meeting and the non-disciplined teacher had simply forgot about it. (Id. pp. 123-24)

55. The plaintiff suffered constant and very severe emotional distress, with physical illnesses as a component, because of the treatment she received from the defendants. (Id. pp. 125-28)

56. The manner in which the defendants informed the plaintiff of their intention not to renew her contract was unique and different from the manner in which all other nonrenewed teachers were informed. The plaintiff was simply sent a letter by defendant Breck, whereas all the others were called in for informal meetings with defendants Viccaro and Breck. (Id. pp. 129-30)

        THE PLAINTIFF

        BY_____
        JOHN R. WILLIAMS (ct00215)
        Williams and Pattis, LLC
        51 Elm Street, Suite 409
        New Haven, CT 06510
        (203) 562-9931
        Fax: (203) 776-9494
        E-Mail: jrw@johnrwilliams.com
        Attorney for Plaintiff

**CERTIFICATION OF SERVICE**

A copy hereof was mailed, on the above date, via first-class mail, postage prepaid, to Mark J. Sommaruga, Esq., Sullivan, Schoen, Campane & Connon, LLC, 646 Prospect Avenue, Hartford, CT 06105.

        _____
        JOHN R. WILLIAMS