UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN BROWN, | : | |
|       Plaintiff, | : | NO. 3:03CV420(MRK) |
| | : | |
| v. | : | |
| | : | |
| REGIONAL SCHOOL DISTRICT 13, | : | |
| WILLIAM D. BRECK, | : | |
| SUSAN L. VICCARO, and | : | |
| ANN RICHARDSON, | : | |
|       Defendants. | : | |

**MEMORANDUM OF DECISION**

In this action, Plaintiff Susan Brown ("Ms. Brown") sues her former employer, Regional School District 13 (the "District"), William Breck ("Superintendent Breck"), the District's Superintendent of Schools, Susan Viccaro ("Ms. Viccaro"), the District's Director of Pupil Services, and Ann Richardson ("Dr. Richardson"), the Principal of Strong Middle School, alleging violations of her First Amendment right to freedom of association and her Fourteenth Amendment right to equal protection of the laws, as well as state law claims for negligent and intentional infliction of emotional distress. Defendants have moved for summary judgment. For the reasons stated below, the Motion for Summary Judgment [doc. #25] is GRANTED.

**I.**

The basic facts underlying this case are not in serious dispute. The District employed Ms. Brown as a non-tenured special education teacher at Strong Middle School, starting in August 1999. Defs' Local Rule 56(a)1 Statement [doc. #27], ¶ 1. It appears that Ms. Brown was hired on a series of one-year contracts, which needed to be renewed every year on the first day of August.

1

*Id.* ¶¶ 9e, 10, 13. The District renewed Ms. Brown's contract after each of the first three years of her employment.

Ms. Brown alleges that Defendants subjected her "to a continuous pattern of abuse and harassment, including false accusations of trivial deficiencies as an employee on a constant basis. Such misconduct by the Defendants has included placing false and malicious statements regarding her in her personnel file and humiliating her in front of her peers." Compl. [doc. #1], ¶ 8. The statements Ms. Brown refers to in her Complaint include her yearly teaching evaluations, as well as other notes placed in her file reflecting various concerns that Ms. Viccaro and Dr. Richardson had with Ms. Brown's performance at various times. *See* Defs' Local Rule 56(a)1 Statement [doc. #27], Attach. D, E, F, G. Ms. Brown made it a point to respond in writing to each of these evaluations and memoranda, and began cc'ing her memos to her lawyer, Leon Rosenblatt, in September 2002. *See, e.g.,* July 9, 2002 memo, *Id.*, Attach. E. (responding to the June 7, 2002 evaluation); Sept. 16, 2002 Memo, *Id.*, Attach G. (responding to Ms. Viccaro's Sept. 11, 2002 memo regarding student confidentiality); Jan. 6, 2003 Memo, *Id.* Attach. J. (responding to Ms. Richardson's Dec. 17, 2002 memo regarding a student's complaints). It is clear from the record of these documents that tensions soon grew between Ms. Brown and Ms. Viccaro and Dr. Richardson.

On October 10, 2002, Ms. Viccaro and Dr. Richardson met with Ms. Brown and Candy Brickley, a representative of Ms. Brown's union, to discuss the concerns about Ms. Brown's performance as well as her allegations of unfair treatment. *Id.*, ¶ 17. At the end of the meeting, Ms. Brickley suggested that Ms. Brown stop preparing response memos to Ms. Viccaro and Dr. Richardson and instead convey her responses at monthly meetings that she was supposed to be

having with Ms. Viccaro and Dr. Richardson pursuant to Ms. Brown's June 2002 evaluation. *Id.* After the meeting, Ms. Viccaro prepared and forwarded to Ms. Brown a memo summarizing the meeting. *Id.* Attach. H.

On November 12, 2002, Leon Rosenblatt, on Ms. Brown's behalf, sent Ms. Viccaro a letter informing her that he now represented Ms. Brown and that he had "been monitoring the manner in which she has been whipsawed between you and Ms. Richardson." Mr. Rosenblatt asserted that "for reasons that have nothing to do with Ms. Brown's performance, she has been harassed, and her professional character, reputation, and good name have been tarnished," and stated that "the situation has had an adverse effect on [Brown's] health and overall well-being." He concluded: "I urge you to cease all negative activity towards Ms. Brown immediately and permanently, including creating a paper trail to 'justify' non-renewal of her contract." *Id.* Attach. I. Ms. Viccaro did not respond to Mr. Rosenblatt's letter, but forwarded it to Superintendent Breck, who responded by stating that he had forwarded the letter to the Board of Education's legal counsel. Pl's Local Rule 56(a)2 Statement [doc. #34], Ex. 1.

Ms. Brown alleges that "the level of hostility directed toward [her] noticeably increased" following her lawyer's November 2002 letter. *Id.* ¶ 41. A few more memos passed between Ms. Viccaro, Dr. Richardson, and Ms. Brown during this period regarding several incidents of tardiness on Ms. Brown's part and her response to a previous memo regarding a student striking a staff member. Defs' Local Rule 56(a)1 Statement [doc. #27], Attach. J, K, L, N. Ms. Brown also received her regularly-scheduled evaluation on January 29, 2003, in which Ms. Viccaro was somewhat critical of her teaching methods and chastised her for not following administrative directives. *Id.* Attach. M. Ms. Brown prepared a written response to this evaluation as well. *Id.*

Under the Teacher Tenure Act, Conn. Gen. Stat. § 10-151, Ms. Brown would receive tenure unless she was notified on or by April 1, 2003 of the non-renewal of her contract, as the 2002-03 school year was Ms. Brown's fourth year teaching in the District. *Id.* ¶ 23. Dr. Richardson and Ms. Viccaro recommended to Superintendent Breck that Ms. Brown's contract not be renewed. *Id.* ¶ 24. Superintendent Breck then recommended to the District's Board of Education that Ms. Brown's contract not be renewed for the 2003-2004 school year. *Id.* ¶ 25. The Superintendent has submitted an affidavit in support of Defendants' motion for summary judgment in which he states that his recommendation that Ms. Brown's contract not be renewed was based on his concern "about the decline in [Ms. Brown's] performance, her problems with communication, her inability to respond to suggestions and constructive criticism, and even a decline in classroom performance." *Id.* Breck Aff. ¶ 14a. He states that he believed "that there should be an upward improvement in the performance of a teacher as he or she approaches the acquisition of tenure, not a decline." *Id.*

On March 3, 2003, Mr. Rosenblatt sent a fax to Ms. Viccaro requesting Ms. Brown's entire personnel file, pursuant to Conn. Gen. Stat. § 31-128a. Pl's Local Rule 56(a)2 Statement [doc. #34], Ex. 2. Later that day, Superintendent Breck prepared and sent a letter to Ms. Brown summoning her to a meeting in his office on March 5, "to discuss [his] decision to recommend to the Region 13 Board of Education that [her] contract of employment not be renewed for the coming school year." Defs' Local Rule 56(a)1 Statement [doc. #27], Attach. O. The Superintendent met with Ms. Brown on March 10 to inform her of his recommendation. *Id.* On March 19, the Board met and voted not to renew Ms. Brown's employment following the end of the school year, a decision communicated by Superintendent Breck to Ms. Brown in a letter dated

4

March 20. *Id.* Attach. P. Ms. Brown responded by requesting a more specific statement of the reasons for not renewing her contract and a hearing before the Board to challenge the non-renewal, as provided in Conn. Gen. Stat. § 10-151. *Id.* ¶ 28. Superintendent Breck and Ms. Viccaro, Dr. Richardson, and Ms. Brown all testified at hearings held on May 20, 21, and June 17, 2003. The Board then voted to affirm its earlier decision after finding that the earlier decision was not arbitrary or capricious. *Id.* Attach. R, S.

Plaintiff filed this lawsuit on March 11, 2003.

## II.

Summary judgment is appropriate when there is no dispute as to a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of demonstrating that there is no genuine material dispute of fact. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000). The Second Circuit has cautioned that "in determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Tomka v. Seiler*, 66 F.3d 1295, 1304 (2d Cir. 1995).

    A.    **First Amendment Claim**

Ms. Brown asserts that she was subjected to adverse employment action, including harassment and abuse as well as the ultimate nonrenewal of her teaching contract, in retaliation for exercising her First Amendment freedom of association rights in hiring Mr. Rosenblatt as her attorney and having him communicate with Defendants. Compl. [doc. #1], ¶¶ 8-12; Brief in

Opp'n to Mot. for Summ. J. [doc. #33], at 22.

When speech is the basis for an adverse employment action – or, in other words, if the state would not have taken a challenged action in the absence of protected speech (as the Court will assume for the purpose of the present motion) – the balancing test set out by the U.S. Supreme Court in *Pickering v. Board of Education,* 391 U.S. 563 (1968), governs. *See, e.g., Heil v. Santoro*, 147 F.3d 103, 109 (2d Cir. 1998). Even though the facts of *Pickering* itself involve a freedom of speech claim, the Second Circuit has made it clear that *Pickering* also provides the relevant analysis for freedom of association claims. *Melzer v. Bd. of Educ*, 336 F.3d 185, 194-95 (2d Cir. 2002).

The *Pickering* test establishes that "first, a court must determine whether the speech which led to an employee's discipline relates to a matter of public concern; and, second, if so, the balance between free speech concerns is weighed against efficient public service to ascertain to which the scale tips." *Id.* at 193. Whether the first step of the *Pickering* test – the so-called "public concern" analysis – applies to expressive associational claims was an open question until recently, when the Second Circuit held that it does. *See Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2004). In *Cobb*, the Second Circuit announced that it had joined the Fourth, Sixth, and Seventh Circuits in holding that "a public employee bringing a First Amendment freedom of association claim must persuade a court that the associational conduct at issue touches on a matter of public concern." *Id*., at 102.

In *Connick v. Myers*, the Supreme Court explained that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a

given statement, as revealed by the whole record." 461 U.S. 138, 147-48 (1984). *Connick* instructs that "when employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, governmental officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." *Id.* at 146. If speech cannot fairly be characterized as constituting speech on matter of public concern, "it is unnecessary . . . to scrutinize the reasons for [the] discharge." *Id.* As the Supreme Court explained, "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147. While the determination of whether speech constitutes a matter of public concern "may be somewhat fact-intensive, it presents a question of law for the court to resolve." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003).

The Court concludes that Ms. Brown's speech and association in this case involved only matters of private concern and not "any matter of political, social, or other concern to the community." Ms. Brown's association with her lawyer was solely for the purpose of representing her interests in an ordinary employment dispute with her employer. Neither her association with her lawyer nor her dispute with her employer involved any issue of public concern; instead, both involved matters of purely personal interest. As such, this Court "is not the appropriate forum in

which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147; *see Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) ("Here, however, there has been no violation of the First Amendment, because Saulpaugh's complaints were "personal in nature and generally related to her own situation.") (quoting *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 781 (2d Cir. 1991)). Accordingly, the Court grants Defendants summary judgment on Ms. Brown's First Amendment claim.

### B.      Fourteenth Amendment Claim

The Supreme Court has allowed for "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Second Circuit has explained that to bring a claim under *Olech*, "plaintiffs can recover if they can show that they were treated differently from similarly situated [persons], . . . and that there was 'no rational basis for the difference in treatment.'" *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2003) (quoting *Olech*. 528 U.S. at 564).[1]

Ms. Brown has alleged that the Defendants treated similarly situated persons differently from her, a claim that Defendants dispute. Since the similarly situated prong of the *Olech* cause

---

[1] The Second Circuit has distinguished between *Olech* claims, which require a plaintiff to prove that the difference in treatment was irrational, and selective prosecution claims, which requires a showing of impermissible considerations "or malicious or bad faith intent to injure a person." *Cobb*, 363 F.3d at 110 (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)); *see also African Trade & Info. Ctr. v. Abromaitis*, 294 F.3d 355, 363-64 (2d Cir. 2002) (distinguishing selective prosecution equal protection claim from *Olech*-based equal protection claim). Plaintiff here has explicitly styled her claim as an *Olech* claim based on a lack of rational basis for the difference in treatment. Brief in Opp'n to Mot. for Summ. J. [doc. #33], at 31-33.

of action is ordinarily a question of fact for the jury, the Court will not resolve that issue on the present motion. *See Harlen Assocs., Inc. v. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001) ("As a general rule, whether [individuals] are similarly situated is a factual issue that should be submitted to the jury."); *see also Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (reversing district court's grant of summary judgment while emphasizing that "[w]hether [] employees are similarly situated ordinarily presents a question of fact for the jury").

Nevertheless, Ms. Brown's Fourteenth Amendment claim founders on the second prong of the *Olech* test. While Ms. Brown asserts that there was no rational basis for the Board's decision not to renew her employment contract, based on the undisputed facts in the record, the Court disagrees. *See* Brief in Opp'n to Mot. for Summ. J. [doc. #33], at 33. The rational basis standard is properly low. The Second Circuit has held that a government body acts irrationally only when it acts "with no legitimate reason for its decision." *Harlen Assocs.*, 273 F.3d at 500 (quoting *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996)). Based on Ms. Viccaro and Dr. Richardson's well-documented concerns regarding Ms. Brown's performance, no rational jury could conclude that the District lacked any legitimate basis for its decision not to renew Ms. Brown's contract.

This case involves a school district's decision not to renew a year-to-year contract with one of its teachers. The Court believes that school districts must be given considerable leeway in determining which teachers they wish to rehire on a year-to-year basis. The fact that the District renewed the contracts of other teachers, even if they missed a staff meeting on occasion like Ms. Brown, in no way demonstrates that the District's decision not to renew her contract was irrational. To rule otherwise would put this Court in the position of second guessing every

9

school's annual hiring decisions, a task that this Court is ill-suited to undertake and that is required neither by the Equal Protection Clause nor the Supreme Court's decision in *Olech*. As the Supreme Court has noted in the student context, "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975). Because Ms. Brown cannot demonstrate that the Defendants lacked any rational basis for their decision not to renew Ms. Brown's teaching contract, her Equal Protection claim is dismissed.

### D. State Claims

Having disposed of all of the federal claims in this case, the Court has discretion to dismiss the state claims as well under 28 U.S.C. §1367(c)(3). "In exercising its discretion with respect to retaining supplemental jurisdiction, the district court balances several factors 'including considerations of judicial economy, convenience, and fairness to litigants.'" *Correspondent Services Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 126 (2d Cir. 2003) (quoting *Purgess v. Sharrock, M.D.*, 33 F.3d 134, 138 (2d Cir. 1994). While considerations of judicial economy and convenience do not lean strongly in either direction, the nature of the case and Defendants' status as state actors suggests that it would be more appropriate for a state court to determine whether the behavior of school officials in this case was sufficient to violate state law. Accordingly, the Court will decline the exercise of supplemental jurisdiction over Ms. Brown's state law claims. The state claims are dismissed without prejudice.

### III.

The Motion for Summary Judgment [doc. #25] is GRANTED. The Clerk is directed to close the file and enter judgment.

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: August 9, 2004